**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

GLENDORA MINJAREZ,

      Plaintiff,

vs.                                                                                          No. CIV 09-0543 JB

JOHN E. POTTER, Postmaster General,
U.S. Postal Service,

      Defendant.

**<u>MEMORANDUM OPINION AND ORDER</u>**

**THIS MATTER** comes before the Court on the Defendant's Motion to Dismiss and/or for

Summary Judgment and Memorandum in Support, filed August 3, 2010 (Doc. 26)("Motion").  The

Court held a hearing on September 15, 2010.  The primary issues are: (i) whether Plaintiff Glendora

Minjarez timely exhausted her administrative remedies; (ii) whether Minjarez has shown that a

genuine issue of material fact exists whether Defendant John E. Potter discriminated against her on

the basis of her race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.

§§ 2000e to 2000e-17; and (iii) whether Minjarez has shown that a genuine issue of material fact

exists whether she is an individual with a disability within the meaning of the Rehabilitation Act of

1973, as amended, 29 U.S.C. §§ 701-794a, and the Defendant discriminated against Minjarez on the

basis of her disability.  Upon reviewing Minjarez' and the Defendant's evidence and arguments, the

Court concludes that Minjarez failed to timely exhaust her administrative remedies, and that, even

if she had properly brought this case before the Court, she fails to demonstrate a genuine issue of

material fact whether the Defendant discriminated against her based on her race or disability.

**<u>FACTUAL BACKGROUND</u>**

      Minjarez is a non-Hispanic Caucasian.  <u>See</u> Plaintiff's Response to the Defendant's Motion

to Dismiss and/or for Summary Judgment and Memorandum in Support at 8, filed August 27, 2010 (Doc. 32)("Response").  The United States Postal Service ("USPS") hired Minjarez on August 26, 2000.  See id. at 1.  She began as a part-time flexible clerk at the Post Office in La Mesa, New Mexico.  See id. at 2.  On May 3, 2003, she was promoted to the position of Postmaster of the Post Office in San Miguel, New Mexico.  See Motion ¶ 1, at 2; Exhibit to Response, Plaintiff's Response to Defendant's Proposed Undisputed Facts at 6, filed August 27, 2010 (Doc. 32-1)("Plaintiff's Undisputed Facts").  Minjarez was the only full-time employee in the San Miguel Post Office; she had a Postmaster Relief, who would relieve her when she was absent from the post office.  See Motion ¶ 2, at 2; Plaintiff's Undisputed Facts ¶ 2, at 6.

On March 11, 2004, Minjarez was purportedly[1] robbed and assaulted while on duty at the San Miguel Post Office.  See Motion ¶ 3, at 2; Plaintiff's Undisputed Facts ¶ 3, at 6.  Minjarez asserts that she suffers Post Traumatic Stress Disorder ("PTSD"), stress, and anxiety as a result of this incident.  See Response at 12-13.  After the incident, Minjarez did not return to work until November 2004.  See Motion ¶ 4, at 2; Plaintiff's Undisputed Facts ¶ 4, at 6.

When she returned to work, Minjarez initially held various short-term positions, but began working in the Las Cruces, New Mexico, Post Office in July 2005.  See Motion ¶ 5, at 3; Plaintiff's Undisputed Facts ¶ 5, at 6.  The USPS accommodated Minjarez' alleged disability through December 2005.  See Motion ¶ 6, at 3; Plaintiff's Undisputed Facts ¶ 6, at 6.

LeGretta Ross-Rollins, Temporary Officer in Charge/Postmaster; Mary Nunez, Manager of Customer Services; Shirley Flores, from the Las Cruces Post Office; Patricia Carpenter, from the

---

[1] The parties used the term "purportedly" in their stipulated facts.  See Motion ¶ 3, at 2; Plaintiff's Undisputed Facts ¶ 3, at 6.  While the Court has no reason to question that the robbery and assault occurred, it will use the language to which the parties stipulated.

-2-

Las Cruces Post Office; Elizabeth Otero, from the USPS Albuquerque District Offices; and Yasmin Montano, from the USPS Albuquerque District Offices, are non-Caucasians who supervised Minjarez between December 2005 and September 2007. <u>See</u> Response at 2-4.

In February of 2006, Minjarez' status was changed from Postmaster to part-time flexible clerk. <u>See</u> Motion ¶ 7, at 3; Plaintiff's Undisputed Facts ¶ 7, at 6; Exhibit to Appendix to Plaintiff's Response to Defendant's Motion to Dismiss and/or for Summary Judgment and Memorandum in Support, Declaration of Glendora Minjarez Given under Penalty of Perjury ¶ 16, at 2, filed August 27, 2010 (Doc. 32-1)("Minjarez' Declaration"). At that time, she could not work by herself in a post office as she had at the San Miguel Post Office. <u>See</u> Motion ¶ 8, at 3; Plaintiff's Undisputed Facts ¶ 8, at 6-7.

In October 27, 2006, Minjarez was offered the position of mail processing clerk, regular, subject to her providing a medical certification indicating that she would be able to perform fully the position's duties. <u>See</u> Motion ¶ 9, at 3; Plaintiff's Undisputed Facts ¶ 9, at 7. Minjarez was bypassed for the position because of her permanent limitations, as indicated in a letter dated July 26, 2006, from Dolores F. Meier, Ph.D., Minjarez' psychologist. <u>See</u> Motion ¶ 10, at 3-4; Plaintiff's Undisputed Facts ¶ 10, at 7; Exhibit to Motion, Letter from Dolores F. Meier, Ph.D. to U.S. Postal Service at 2 (dated July 26, 2006), filed August 3, 2010 (Doc. 26-4). Minjarez was notified that the position was withdrawn in a letter. <u>See</u> Minjarez' Declaration ¶ 18, at 3.[2] Minjarez refused to sign the letter, in part because she felt she should have received it from Ross-Rawlins, not Nunez. <u>See</u> Motion ¶ 11, at 4; Plaintiff's Undisputed Facts ¶ 11, at 7.

While in the Las Cruces Post Office, Minjarez was initially supervised by Montano, a

---

[2] Minjarez' Declaration contains two paragraphs numbered 18. This declaration is in the second of the two.

Hispanic female, who was located in the USPS Albuquerque District Office.  See Motion ¶ 12, at 4; Plaintiff's Undisputed Facts ¶ 12, at 7.  Ross-Rawlins, an African-American female, became the temporary "Officer in Charge/Postmaster" in the Las Cruces Post Office in September 2005.  See Motion ¶ 14, at 4; Plaintiff's Undisputed Facts ¶ 14, at 7.

Minjarez was on medical leave from December 2006 through the beginning of May 2007.  See Motion ¶ 17, at 5; Plaintiff's Undisputed Facts ¶ 17, at 7.  Beginning in February 2007, Otero assisted Minjarez in obtaining a position with the USPS that would meet the limitations that her healthcare providers placed on her.  See Motion ¶ 18, at 5; Plaintiff's Undisputed Facts ¶ 18, at 7-8.

In May 2007, Minjarez was placed in the Anthony, New Mexico, Post Office as an unassigned regular clerk.  See Motion ¶ 19, at 5; Plaintiff's Undisputed Facts ¶ 19, at 8.  In spite of the designation of unassigned regular clerk, Minjarez' position as a part-time flexible clerk was not changed.  See Motion ¶ 20, at 5; Plaintiff's Undisputed Facts ¶ 20, at 8.

Minjarez' contact with Otero ended during the summer of 2007 after Minjarez obtained her position in the Anthony Post Office.  See Motion ¶ 21, at 5; Plaintiff's Undisputed Facts ¶ 21, at 8.  Minjarez remained in the Anthony Post Office until she was awarded disability retirement in May of 2008, although she had been on leave since approximately January 2008.  See Motion ¶ 22, at 5; Plaintiff's Undisputed Facts ¶ 22, at 8.

During the entire time Minjarez remained in the Anthony Post Office, she was not discriminated against on the basis of her race, and her alleged disability was accommodated.  See Motion ¶¶ 23-24, at 5-6; Plaintiff's Undisputed Facts ¶¶ 23-24, at 8.  While she was in Anthony, neither Ross-Rawlins nor Flores had any supervisory authority over her.  See Motion ¶ 25, at 6; Plaintiff's Undisputed Facts ¶ 25, at 8.

## PROCEDURAL BACKGROUND

Minjarez brings this action pursuant to Title VII of the Civil Rights Act of 1964 and the Rehabilitation Act of 1973.  She alleges that she suffered adverse employment actions as a direct result of her race, asserting that Ross-Rollins, Otero, Montano, and Flores are non-Caucasians who supervised Minjarez at different times, and that "[t]hey all limit[ed] Ms. Minjarez alternatives to working."  Response at 8.  She further alleges that the Defendant "creat[ed] and condon[ed] a disability bias and a hostile work atmosphere which changed the terms and conditions of her employment."  Complaint at 6.

Minjarez first contacted the USPS EEO office on September 7, 2007.  See Motion ¶ 26, at 6; Plaintiff's Undisputed Facts ¶ 26, at 8; Exhibit to Motion, U.S. Postal Service EEO Dispute Resolution Specialist's (DRS) Inquiry Report at 1, filed August 3, 2010 (Doc. 26-6).  Minjarez' EEO Complaint of Discrimination in the Postal Service is dated November 14, 2008.  See Motion ¶ 27, at 6; Plaintiff's Undisputed Facts ¶ 27, at 8; Exhibit to Motion, EEO Complaint of Discrimination in the Postal Service at 1, filed August 3, 2010 (Doc. 26-7)("EEO Complaint").  Minjarez' EEO Complaint incorrectly uses a date of November 18, 2008, instead of November 18, 2006, in the handwritten, narrative portion.  See Motion ¶ 28, at 6; Plaintiff's Undisputed Facts ¶ 28, at 8.

On June 3, 2009, Minjarez filed her Complaint in this Court.  On August 3, 2010, the Defendant filed his Motion to Dismiss and/or for Summary Judgment pursuant to rule 12(b)(1) and rule 56 of the Federal Rules of Civil Procedure, alleging that the Court does not have subject-matter jurisdiction over this case because Minjarez failed to exhaust her administrative remedies in a timely manner, and in the alternative arguing that there is no genuine issue of material fact that Minjarez was discriminated against based on her race or disability, and that she is not an individual with a

disability as that term is defined in the Rehabilitation Act.  Minjarez opposes the motion.[3]

## LEGAL STANDARD FOR MOTIONS TO DISMISS UNDER RULE 12(b)(1)

"Federal courts are courts of limited jurisdiction; they are empowered to hear only those cases authorized and defined in the Constitution which have been entrusted to them under a jurisdictional grant by Congress."  Henry v. Office of Thrift Supervision, 43 F.3d 507, 511 (10th Cir. 1994)(citations omitted).  A plaintiff generally bears the burden of demonstrating the court's jurisdiction to hear his or her claims.  See Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 104 (1998)("[T]he party invoking federal jurisdiction bears the burden of establishing its existence.").  Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a party to raise the defense of the court's "lack of jurisdiction over the subject matter" by motion.  Fed. R. Civ. P. 12(b)(1).  The United States Court of Appeals for the Tenth Circuit has held that motions to dismiss for lack of subject-matter jurisdiction "generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based."  Ruiz v. McDonnell, 299 F.3d

---

[3] In his Reply, the Defendant argues that the Court should grant summary judgment on his behalf because Minjarez' Response if procedurally deficient.  See Defendant's Supplemental Reply to Plaintiff's Response to Defendant's Motion to Dismiss and/or for Summary Judgment and Memorandum in Support at 5, filed September 24, 2010 (Doc. 45)("Reply").  In violation of rule 56(e)(2) of the Federal Rules of Civil Procedure and local rule 56.1(b) of the United States District Court for the District of New Mexico, Minjarez fails to properly provide support for the facts underlying her claims or to respond to the Defendant's Statement of Undisputed Materials Facts.  Minjarez' Response reiterates the facts from her Complaint under the heading "Factual Background" without providing citations to the record.  She admits in part and denies in part facts in paragraphs 7, 11, and 13 of Defendant's Statement of Undisputed Materials Facts without clarifying which parts she admits and which she denies.  For facts in paragraphs 7 and 13, she cites only Minjarez' Declaration without referencing a particular paragraph or even page number.  She similarly denies the facts in paragraphs 15 and 16 of Defendant's Statement of Undisputed Materials Facts with only a general reference to Minjarez' Declaration.  Because the Court grants summary judgment for the Defendant on other grounds, it declines to do so based on Minjarez' failure to abide rule 56(e)(2) of the Federal Rules of Civil Procedure and D.N.M.LR-Civ.56.1(b).

1173, 1180 (10th Cir. 2002).

> On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a rule 12(b)(6) motion: the court must consider the complaint's allegations to be true. See Ruiz v. McDonnell, 299 F.3d at 1180; Williamson v. Tucker, 645 F.2d 404, 412 (5th Cir. 1981). But when the attack is aimed at the jurisdictional facts themselves, a district court may not presume the truthfulness of those allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 [summary-judgment] motion.

Alto Eldorado Partners v. City of Santa Fe, No. CIV 08-0175 JB/ACT, 2009 WL 1312856, at **8-9

(D.N.M. Mar.11, 2009)(Browning, J.)(citations omitted). As the United States Court of Appeals for

the Fifth Circuit has stated:

> [T]he trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction -- its very power to hear the case -- there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

Williamson v. Tucker, 645 F.2d at 412-13 (quoting Mortenson v. First Fed. Sav. & Loan Ass'n., 549

F.2d 884, 891 (3d Cir. 1977)).

When making a rule 12(b)(1) motion a party may go beyond the allegations in the complaint

to challenge the facts upon which jurisdiction depends, and may do so by relying on affidavits or

other evidence properly before the court. See New Mexicans for Bill Richardson v. Gonzales, 64

F.3d 1495, 1499 (10th Cir. 1995); Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995). In

those instances, a court's reference to evidence outside the pleadings does not necessarily convert

the motion to a rule 56 motion for summary judgment. See Holt v. United States, 46 F.3d at 1003

(citing Wheeler v. Hurdman, 825 F.2d 257, 259 n.5 (10th Cir. 1987)). Where, however, the court

determines that jurisdictional issues raised in a rule 12(b)(1) motion are intertwined with the case's merits, the court should resolve the motion under either rule 12(b)(6) or rule 56.  See Franklin Sav. Corp. v. United States, 180 F.3d 1124, 1129 (10th Cir. 1999); Tippet v. United States, 108 F.3d 1194, 1196 (10th Cir. 1997).  "When deciding whether jurisdiction is intertwined with the merits of a particular dispute, 'the underlying issue is whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim.'"  Davis ex rel. Davis v. United States, 343 F.3d 1282, 1296 (10th Cir. 2003)(quoting Sizova v. Nat'l Inst. of Standards & Tech., 282 F.3d 1320, 1324 (10th Cir. 2002)).

## LEGAL STANDARD FOR MOTIONS FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure states that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  The movant bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case."  Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991)(internal quotation marks omitted).  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the movant meets this burden, rule 56(e) requires the non-moving party to designate specific facts showing that there is a genuine issue for trial.  See Celotex Corp. v. Catrett, 477 U.S. at 324; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir. 1993)("However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof.")(internal quotes omitted).

-8-

The party opposing a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated §., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). Rule 56 provides that "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must -- by affidavits or as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his [or her] pleadings." Anderson v. Liberty Lobby, Inc., 477 U.S. at 256. See Abercrombie v. City of Catoosa, 896 F.2d 1228, 1231 (10th Cir. 1990); Otteson v. United States, 622 F.2d 516, 519 (10th Cir. 1980)("However, 'once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried.'" (citation omitted)). Nor can a party "avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation." Colony Nat'l Ins. Co. v. Omer, No. 07-2123, 2008 WL 2309005, at *1 (D. Kan. June 2, 2008)(citing Fed. R. Civ. P. 56(e) and Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d 1193, 1199 (10th Cir. 2006)). "In responding to a motion for summary judgment, 'a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial.'" Colony Nat'l Ins. Co. v. Omer, 2008 WL 2309005, at *1 (quoting Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988)).

Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. at

250.  A mere "scintilla" of evidence will not avoid summary judgment.  Vitkus v. Beatrice Co., 11

F.3d at 1539.  Rather, there must be sufficient evidence on which the fact-finder could reasonably

find for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 251 (quoting

Schuylkill & Dauphin Improv. Co. v. Munson, 81 U.S. 442, 448 (1871)); Vitkus v. Beatrice Co., 11

F.3d at 1539.  "[T]here is no evidence for trial unless there is sufficient evidence favoring the

nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable . . .

or is not significantly probative, . . . summary judgment may be granted."  Anderson v. Liberty

Lobby, Inc., 477 U.S. at 249 (internal citations omitted).  Where a rational trier of fact, considering

the record as a whole, could not find for the non-moving party, there is no genuine issue for trial.

See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When reviewing a motion for summary judgment, the court should keep in mind three

principles.  First, the court's role is not to weigh the evidence, but to assess the threshold issue

whether a genuine issue exists as to material facts requiring a trial.  See Anderson v. Liberty Lobby,

Inc., 477 U.S. at 249.  Second, the court must resolve all reasonable inferences and doubts in favor

of the non-moving party, and construe all evidence in the light most favorable to the non-moving

party.  See Hunt v. Cromartie, 526 U.S. 541, 550-55 (1999).  Third, the court cannot decide any

issues of credibility.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 255.

## LAW REGARDING EXHAUSTION OF TITLE VII AND REHABILITATION ACT CLAIMS

"The exhaustion of administrative remedies is a jurisdictional prerequisite to instituting an

action in federal court under both the Rehabilitation Act and Title VII."  Showalter v. Weinstein,

233 F. App'x 803, 804 (10th Cir. 2007)(citing Woodman v. Runyon, 132 F.3d 1330, 1341 (10th Cir.

1997)(Rehabilitation Act); Jones v. Runyon, 91 F.3d 1398, 1399 (10th Cir. 1996)(Title VII)).  The

failure to exhaust administrative remedies in a timely fashion, however, is not jurisdictional, although it may bar a plaintiff from bringing his or her claims in federal court.  See Sizova v. Nat'l Inst. of Standards & Tech., 282 F.3d at 1325 (noting that "a failure to timely file an administrative charge . . . is not jurisdictional, [but that] a failure to file an administrative charge at all . . . is a jurisdictional bar").  "Federal employees alleging discrimination or retaliation prohibited by Title VII or the Rehabilitation Act must comply with specific administrative complaint procedures in order to exhaust their administrative remedies.  Showalter v. Weinstein, 233 F. App'x at 804 (citing 29 C.F.R. pt. 1614).  The United States Court of Appeals for the Tenth Circuit "appl[ies] Title VII's jurisdictional requirements to the Rehabilitation Act."  Greenlee v. U.S. Postal Service, 247 F. App'x 953, 955 (10th Cir. 2007)(citing Johnson v. Orr, 747 F.2d 1352, 1356-57 (10th Cir. 1984)).

A plaintiff generally must exhaust his or her administrative remedies before pursuing a Title VII or Rehabilitaion Act claim in federal court.  See Khader v. Aspin, 1 F.3d 968, 970 (10th Cir. 1993).  Exhaustion of administrative remedies is central to these statutory schemes, because it provides the Equal Employment Opportunity Commission ("EEOC") with the first opportunity to investigate discriminatory practices, and enables it to perform its roles of obtaining voluntary compliance and of promoting conciliatory efforts.  See Patterson v. McLean Credit Union, 491 U.S. 164, 180-81 (1989); Woodman v. Runyon, 132 F.3d at 1342 ("The twofold purpose of the exhaustion requirement is to give notice of an alleged violation to the charged party and to give the administrative agency an opportunity to conciliate the claim in furtherance of Title VII's goal of securing voluntary compliance."); Khader v. Aspin, 1 F.3d at 971 ("The requirement that a Title VII claimant exhaust administrative remedies serves the purpose of 'giv[ing] the agency the information it needs to investigate and resolve the dispute between the employee and the employer.'")(quoting

Wade v. Sec'y of Army, 796 F.2d 1369, 1377 (11th Cir. 1986)); Sampson v. Civiletti, 632 F.2d 860,

862-63 (10th Cir 1980)("The requirement that discrimination complaints be first presented to an

agency rather than a court encourages informal, conciliation-oriented resolution of disputes and

reduces the burden on federal courts.")(citing Richerson v. Jones, 572 F.2d 89, 97 (3d Cir. 1978)).

"'[A]llowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge

would circumvent the EEOC's investigatory and conciliatory role, as well as deprive the charged

party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge.'"

Welsh v. City of Shawnee, 182 F.3d 934, 935 (10th Cir. 1999)(quoting Schnellbaecher v. Baskin

Clothing Co., 887 F.2d 124, 127 (7th Cir. 1989)).

### 1.    The Exhaustion of Administrative Remedies Is Jurisdictional.

The most common method of administrative exhaustion for federal employees is the

individual EEO complaint process.  The regulations that the EEOC promulgated , see 29 C.F.R. Part

1614, and the Commission's Management Directive 110 govern the initial EEO complaint process.

Pre-complaint counseling is the first step in that process, see 29 C.F.R. § 1614.105, requiring the

aggrieved employee to consult with an agency counselor within forty-five days of the alleged

discriminatory act or, in the case of a personnel action, within forty-five days of the effective date

of the action, see id.  The forty-five day requirement applies to both Title VII and Disability Act

claims.  29 C.F.R. § 1614.105(a)(1) provides:

> Aggrieved persons who believe they have been discriminated against on the basis of
> race, color, religion, sex, national origin, age, disability, or genetic information must
> consult a Counselor prior to filing a complaint in order to try to informally resolve
> the matter. . . .  An aggrieved person must initiate contact with a Counselor within
> 45 days of the date of the matter alleged to be discriminatory or, in the case of
> personnel action, within 45 days of the effective date of the action.

29 C.F.R. § 1614.105(a)(1).

After timely filing a charge of discrimination with the EEOC setting forth the facts and nature of the charge, the plaintiff must next receive notice of the right to sue.  See Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1326 (10th Cir. 1999); 42 U.S.C. § 2000e-5(b), (c), (e), (f)(1).  "[A] plaintiff normally may not bring a Title VII action based upon claims that were not part of a timely-filed EEOC charge for which the plaintiff has received a right-to-sue letter." Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d at 1321.  Once an individual receives notice of the right to sue, he or she has ninety days in which to file suit. See 42 U.S.C. § 2000e-5(f)(1).

Filing a charge of discrimination with the EEOC is a jurisdictional prerequisite to the institution of a lawsuit based on a claim of employment discrimination under Title VII and the Rehabilitation Act.  See Alcivar v. Wynne, 268 F. App'x 749, 753 (10th Cir. 2008)("The Tenth Circuit has consistently held that 'exhaustion . . . is a jurisdictional prerequisite to suit under Title VII -- not merely a condition precedent to suit.'")(quoting Shikles v. Sprint/United Mgmt. Co., 426 F.3d 1304, 1317 (10th Cir. 2005)); Ransom v. U.S. Postal Service, 170 F. App'x 525, 527 & n.2 (10th Cir. 2006)("[A] claimant under the Rehabilitation Act . . . is required to present her claims to the appropriate EEO agency before filing suit.")(citing 5 U.S.C. § 7702(a)(2); Wells v. Shalala, 228 F.3d 1137, 1142-43 (10th Cir. 2000)); Jones v. Runyon, 91 F.3d at 1399 ("Exhaustion of administrative remedies is a jurisdictional prerequisite to suit under Title VII."); Romero v. Union Pac. R.R., 615 F.2d 1303, 1303 (10th Cir. 1980).  Without such a filing, federal courts lack subject-matter jurisdiction to entertain discrimination claims under that statutes, and a rule 12(b)(1) motion to dismiss is procedurally proper. See Seymore v. Shawyer & Sons, Inc., 111 F.3d 794, 799 (10th

-13-

Cir. 1997); Carmody v. SCI Colo. Funeral Servs., Inc., 76 F. Supp. 2d 1101, 1103-1104 (D. Colo.

1999).[4]

### a.     Each Discrete Incident Must be Exhausted.

Before 2002, the Tenth Circuit recognized a limited exception to the "exhaustion rule for

Title VII claims when the unexhausted claim is for discrimination like or reasonably related to the

allegations of the EEOC charge." Simms v. Oklahoma ex. rel. Dep't of Mental Health and Substance

Abuse Servs., 165 F.3d at 1327 (internal citations and quotations omitted).   The Tenth Circuit

"construed the reasonably related exception to include most retaliatory acts subsequent to an EEOC

filing." Simms v. Oklahoma ex. rel. Dep't of Mental Health and Substance Abuse Servs., 165 F.3d

at 1327 (citing Seymore v. Shawyer & Sons, Inc., 111 F.3d at 799). In Martinez v. Potter, 347 F.3d

1208 (2003), however, the Tenth Circuit noted that the "Supreme Court's pronouncement in

National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002), has effected fundamental

changes to the doctrine allowing administratively unexhausted claims in Title VII actions."  347

---

[4] The Tenth Circuit has mentioned some concern whether failure to exhaust administrative remedies is still a jurisdictional prerequisite to suit after the Supreme Court's decision in Jones v. Bock, 549 U.S. 199 (2007).  See, e.g., Alcivar v. Wynne, 268 F. App'x at 753 (noting that "Jones v. Bock held that under the PLRA [Prison Litigation Reform Act] exhaustion is an affirmative defense to be raised by the defendant and not a jurisdictional pleading requirement," but finding it was "not . . . necessary to decide whether exhaustion is jurisdictional under Title VII after Jones."); McQueen v. Colo. Springs Sch. Dist. No. 11, 488 F.3d 868, 874 (10th Cir. 2007)("Although courts have repeatedly referred to the exhaustion requirement as *jurisdictional*, . . . recent Supreme Court jurisprudence in other contexts casts doubt on that characterization[.]")(citations omitted, emphasis in original).   Neither party in this case argues that administrative exhaustion is not still a jurisdictional prerequisite.   Moreover, a recent unpublished Tenth Circuit decision indicates that Jones v. Bock did not demote the exhaustion requirement from a jurisdictional prerequisite to an affirmative defense, at least in the Title VII context.   See Martinez v. Target Corp., No. 09-2112, 2010 WL 2616651, at *3 n.2 (10th Cir. July 1, 2010)(slip op.)(Kelly, Porfilio, O'Brien, JJ.)("Martinez is not proceeding under the PLRA; Bock is inapposite.  She does not point us to a single decision -- of this or any other court -- applying Bock in the context of a Title VII or ADEA case.").

F.3d at 1210.  The Tenth Circuit stated:

> We agree with the government that such unexhausted claims involving discrete employment actions are no longer viable.  <u>Morgan</u> abrogates the continuing violation doctrine as previously applied to claims of discriminatory or retaliatory actions by employers, and replaces it with the teaching that each discrete incident of such treatment constitutes its own unlawful employment practice for which administrative remedies must be exhausted.

347 F.3d at 1209 (internal citations and quotations omitted).

Thus, under <u>National Railroad Passenger Corp. v. Morgan</u>, each discrete act of discrimination must be administratively exhausted.  "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify.  Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice."  <u>National R.R. Passenger Corp. v. Morgan</u>, 536 U.S. at 114 (internal citations and quotations omitted).  In <u>National Railroad Passenger Corp. v. Morgan</u>, this rule applied to bar a plaintiff from suing on claims for which no administrative remedy had been sought when those incidents of which the plaintiff complained occurred more than 300 days before the filing of the plaintiff's EEO complaint.  <u>See</u> <u>Martinez v. Potter</u>, 347 F.3d at 1210.  "The rule is equally applicable, however, to discrete claims based on incidents occurring after the filing of Plaintiff's EEO complaint."  <u>Martinez v. Potter</u>, 347 F.3d at 1210.  The Tenth Circuit has stated: "Our decisions have unambiguously recognized <u>Morgan</u> as rejecting application of the continuing violation theory."  <u>Martinez v. Potter</u>, 347 F.3d at 1211 (internal quotations omitted).

### b.  At Least One Act of a Hostile Environment Claim Must Be Exhausted.

A different rule applies to hostile environment claims.  Under <u>National Railroad Passenger Corp. v. Morgan</u>, a series of events that constitute a hostile-environment claim are considered one unlawful action.  <u>See</u> <u>West v. Norton</u>, 376 F. Supp. 2d 1105, 1129 (D.N.M. 2004)(Browning, J.).

"Hostile environment claims are different in kind from discrete acts.  Their very nature involves repeated conduct." National Railroad Passenger Corp. v. Morgan, 536 U.S. at 115 (internal citations and quotations omitted).  An "unlawful employment practice" that constitutes a hostile-work environment thus cannot be said to occur on any particular day, but rather occurs over a series of days or years. Id. (citing Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993)).  Thus, so long as one of the incidents included within the hostile environment claim occurred within the forty-five-day time limit provided under 29 C.F.R. § 1614.105(a)(1), other conduct that occurred outside of the proscribed time period, but contributing to the hostile work environment, is not time barred.  See National Railroad Passenger Corp. v. Morgan, 536 U.S. at 115 (holding "that consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period[]"); West v. Norton, 376 F. Supp. 2d at 1129.

### 2. **Time Requirements for Exhausting Administrative Remedies Are Not Jurisdictional.**

While failure to exhaust administrative remedies is a jurisdictional bar to suit, in Zipes v. Trans World Airlines, Inc., 455 U.S. 385 (1982), the Supreme Court of the United States held that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."  455 U.S. at 393.  See DeWalt v. Meredith Corp., 288 F. App'x 484, 490 (10th Cir. 2008)(citing Zipes v. Trans World Airlines, Inc., 455 U.S. at 393; Beaird v. Seagate Tech., Inc., 145 F.3d 1159, 1174-75 (10th Cir.1998)).  The Tenth Circuit  treats a plaintiff's failure to timely exhaust administrative remedies not "as a jurisdictional issue, [but] rather . . . as an

affirmative defense to be raised by [defendants]." DeWalt v. Meredith Corp., 288 F. App'x at 490.

When a defendant brings a motion to dismiss for lack of subject matter jurisdiction under rule

12(b)(1) based on a plaintiff's failure to exhaust administrative remedies in a timely manner, a court

"analyze[s] th[e] case under 12(b)(6) of the Federal Rules of Civil Procedure," unless a court

considers materials outside the complaint, in which case "it should . . . treat[] [the] motion as a

motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure." Douglas v.

Norton, 167 F. App'x 698, 704-05 (10th Cir. 2006).

Though not jurisdictional, the forty-five-day limitation period is not an arbitrary barrier.  It

is designed to give an agency timely notice of potentially illegal conduct, to discover and correct its

own errors and possibly to conciliate the claim.  Sampson v. Civiletti, 632 F.2d at 863.  An

employee who fails to comply with the limitation period is barred from seeking judicial relief in

federal court, absent a defense of equitable tolling.  See Davis v. U.S. Postal Serv., 142 F.3d 1334,

1339 (10th Cir. 1998); Wilson v. West, 962 F. Supp. 939, 944 (1997).

### a.     Exceptions of Equitable Tolling Are Narrowly Construed.

"Equitable exceptions, however, have been narrowly construed." Id.  See Montoya v. Chao,

296 F.3d 952, 957 (10th Cir. 2002)(stating that "federal courts have typically extended equitable

relief only sparingly.").  The Tenth Circuit "has generally recognized equitable tolling of Title VII

periods of limitation only if circumstances rise to the level of active deception which might invoke

the powers of equity to toll the limitations period." Montoya v. Chao, 296 F.3d at 957.  See Godwin

v. Sw. Research Inst., 237 F. App'x 306, 307 (10th Cir. 2007)("Our precedent requires that an

ADEA plaintiff demonstrate 'active deception' on the part of an employer, the EEOC, or the

court."); Biester v. Midwest Health Servs., Inc., 77 F.3d 1264, 1269 n.2 (10th Cir. 1996)(noting in

a Title VII case that "extraordinary circumstances" are "necessary to justify equitable tolling under established Tenth Circuit precedent."). "Equitable tolling may be appropriate where a plaintiff has been lulled into inaction by an employer's 'deliberate design . . . or actions that the employer should unmistakably have understood would cause the employee to delay filing his charge.'" Al-Ali v. Salt Lake Cmty. Coll., 269 F. App'x 842, 847 (10th Cir. 2008)(quoting Hulsey v. Kmart, Inc., 43 F.3d 555, 557 (10th Cir. 1994)). Equitable tolling "is not warranted where an employee is aware of all of the facts constituting discriminatory treatment but lacks direct knowledge of the employer's subjective discriminatory purpose." Bennett v. Coors Brewing Co., 189 F.3d 1221, 1235 (10th Cir. 1999)(citation omitted).

      **b.**    **Equitable Tolling Is Within the District Court's Discretion.**

The decision whether to equitably toll the limitations period rests within the district court's sound discretion. See Purrington v. Univ. of Utah, 996 F.2d 1025, 1030 (10th Cir. 1993). In Castaldo v. Denver Public Schools, 276 F. Appx. 839 (10th Cir. 2008), the Tenth Circuit found that the district court did not abuse its discretion when it chose not to apply equitable tolling to the plaintiff's EEOC charge when the plaintiff alleged: (i) that his employer did not post notices regarding the filing of EEOC charges; (ii) that he was too incapacitated by his shoulder injuries to file an EEOC charge; and (iii) he was proceeding pro se. See 276 F. App'x at 841. The Tenth Circuit found no error in the district court's conclusion that the failure to post EEOC notices was not a sufficient justification for equitable tolling. See 276 Fed. Appx. at 841. See also Wilkerson v. Siegfried Ins. Agency, Inc., 683 F.2d 344, 347 (10th Cir. 1982)(holding that "the simple failure to post . . . notices, without intent to actively mislead the plaintiff respecting the cause of action, does not extend the time within which a claimant must file his or her discrimination charge"). The

district court noted that the plaintiff did not allege that his employer intended to actively deceive him by failing to post notices about filing EEOC charges.  See Castaldo v. Denver Pub. Schs., 276 F. App'x at 841.  The Tenth Circuit also concluded that the statements in the plaintiff's EEOC charge revealed that it was not his alleged incapacity that prevented him from filing a timely charge, but rather the fact that he was unaware of his obligation to do so until he consulted an attorney.  See 276 F. App'x at 841.  The Tenth Circuit found that "his ignorance of the filing requirement does not entitle him to equitable tolling."  276 Fed. Appx. at 841.  Finally, the Tenth Circuit upheld the district court's finding that the plaintiff's pro-se status did not justify equitable tolling, because the plaintiff had the ability to contact an attorney but elected not to do so until well after the expiration of the filing period.  See 276 F. App'x at 842.

In Godwin v. Southwest Research Institute, the Tenth Circuit held that the district court did not abuse its discretion in refusing to employ equitable tolling when the plaintiff misaddressed his EEOC submission, which arrived forty-four days after the time limit had expired.  See 237 F. App'x at 307-08.  In Baker v. Perfection Hy-Test, No. 95-6091, 1996 U.S. App. LEXIS 27, at *7 (10th Cir. Jan. 2, 1996), the Tenth Circuit held that there was no active deception sufficient to toll the 300-day deadline where the plant manager of the plaintiff's employer told the plaintiff, after his demotion, that "restructuring was happening 'all over the country,' that plaintiff 'couldn't sue,' [and] that he might try but he 'wouldn't get to first base.'"  1996 U.S. App. LEXIS 27, at *7.  The Tenth Circuit found that the statements "at most expressed an opinion concerning plaintiff's likelihood of success."  Id. at *7.

## LAW REGARDING TITLE VII EMPLOYMENT DISCRIMINATION CASES

"Title VII of the Civil Rights Act of 1964 forbids employment discrimination based on race,

color, religion, sex, or national origin." Brown v. Gen. Servs. Admin., 425 U.S. 820, 825

(1976)(citing 42 U.S.C. §§ 2000e-2, 2000e-3).

> Title VII of the Civil Rights Act of 1964 prohibits an employer from failing or
> refusing to hire or discharging any individual, or otherwise discriminating against
> any individual with respect to his compensation, terms, conditions, or privileges of
> employment, because of such individual's race, color, religion, sex, or national
> origin.

Farley v. Leavitt, No. CIV 05-1219 JB/LFC, 2007 WL 6364329, at *6 (D.N.M. Dec. 31,

2007)(Browning, J.)(quoting 42 U.S.C. § 2000e-2(a)(1))(internal quotes and alterations omitted).

With the 1972 amendments to the statute, Title VII's protections apply to federal employees as well

as to employees of private concerns.  See Brown v. Gen. Servs. Admin., 425 U.S. at 825-26 (citing

42 U.S.C. § 2000e(b)).

### 1.      McDonnell-Douglas Test.

At the summary-judgment stage,  the nonmoving party must come forth with some proof of

discrimination, either by demonstrating direct evidence of the employer's discriminatory intent or,

"[u]nder McDonnell Douglas, a plaintiff may survive summary judgment by providing

circumstantial rather than direct evidence of discrimination."  Jones v. Oklahoma City Public

Schools, No. 09-6108, 2010 WL 3565741, at *4 (10th Cir. Aug. 24, 2010).  If the plaintiff relies on

indirect evidence to survive summary judgment, he or she must show a material factual dispute

exists regarding one the elements required to establish a prima-facie case of discrimination under

the McDonnell Douglas framework.  If a plaintiff puts forward evidence supporting a prima-facie

case, "the burden shifts to the defendant to come forward with a legitimate nondiscriminatory reason

for its employment related decision."  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802

(1973).  "Upon the employer's articulation of a legitimate, nondiscriminatory reason . . . the

presumption of discrimination established by the prima facie case simply drops out of the picture."

Kelly v. City of Albuquerque, 375 F. Supp. 2d 1183, 1210 (D.N.M. 2004)(Browning, J.)(internal

quotations omitted).  The plaintiff then must present evidence that the defendant's proffered reason

for the employment decision was pretextual.  See id. (citing Kendrick v. Penske Transp. Servs., Inc.,

220 F.3d 1220, 1230 (10th Cir. 2000)).

      **a.**      **Direct Evidence.**

"Direct evidence is evidence, which if believed, proves the existence of a fact in issue

without inference or presumption."  Hall v. U.S. Dep't of Labor, 476 F.3d 847, 855 (10th Cir. 2007).

Moreover, "[d]irect evidence demonstrates on its face that the employment decision was reached

for discriminatory reasons."  Danville v. Reg'l Lab Corp., 292 F.3d 1246, 1249 (10th Cir. 2002).

"When a plaintiff alleges that discriminatory comments constitute direct evidence of discrimination,

[the Tenth Circuit] has held that the plaintiff must demonstrate a nexus exists between the alleged

discriminatory statements and the . . . decision to terminate [the employee]."  Negrete v. Maloof

Distrib. L.L.C., No. CIV 06-0338 JB/LFG, Memorandum Opinion and Order at 39, filed November

28, 2007 (D.N.M.)(Browning, J.)(internal quotations omitted).  "Direct evidence is that which

demonstrates a specific link between the alleged discriminatory animus and the challenged

[employment] decision, sufficient to support a finding by a reasonable fact finder that an illegitimate

criterion actually motivated [the employer's] decision to take the adverse employment action."

Deneen v. Nw. Airlines, 132 F.3d 431, 436 (8th Cir. 1998).

      **b.**      **Indirect Evidence in the McDonnell Douglas Framework.**

A plaintiff may use indirect evidence to establish a case under Title VII.  See McDonnell

Douglas Corp. v. Green, 411 U.S. at 802-803 "[C]laims of age, race, national origin, gender

discrimination, and retaliation are all subject to the burden shifting framework that the Supreme

Court established in McDonnell Douglas Corp. v. Green." Gamez v. Country Cottage Care and

Rehab., 377 F. Supp. 2d 1103, 1119 (D.N.M. 2005)(Browning, J.)(citing McDonnell Douglas Corp.

v. Green, 411 U.S. at 802-804).  Under the McDonnell Douglas framework, a plaintiff must set forth

a prima-facie case of discrimination.  See Kelly v. City of Albuquerque, 375 F. Supp. 2d at 1210.

If the plaintiff establishes a prima-facie case for any of his discrimination claims, "the burden shifts

to the defendant to come forward with a legitimate nondiscriminatory reason for its employment

related decision."  Mitchell v. City of Wichita, Kan., 140 F. App'x 767, 777 (10th Cir. 2005).

"Upon the employer's articulation of a legitimate, nondiscriminatory reason . . . the presumption of

discrimination established by the prima facie case simply drops out of the picture."  Kelly v. City

of Albuquerque, 375 F. Supp. 2d at 1210 (internal quotations omitted).  The plaintiff then must

present evidence that the defendant's proffered reason for the employment decision was pretextual.

See id. (citing Kendrick v. Penske Transp. Servs., Inc., 220 F.3d at 1230).

### 2.    Prima-Facie Case of Disparate Treatment.

In Martinez v. United States Department of Energy, 170 F. App'x 517 (10th Cir. 2006), the

Tenth Circuit explained:

> To prevail on a disparate treatment claim under Title VII of the Civil Rights Act, the
> employee must show the employer intentionally discriminated against him for a
> reason prohibited by the statute.  If, as here, the employee relies on circumstantial
> evidence, we apply the burden-shifting framework outlined in McDonnell Douglas
> Corp. v. Green.

170 F. App'x at 521 (internal citations and quotations omitted).  To establish a prima-facie case of

discrimination under the McDonnell Douglas framework, a plaintiff must demonstrate that: (i) she

is a member of a protected class; (ii) she suffered an adverse-employment action, and (iii) similarly

situated employees were treated differently.  See Orr v. City of Albuquerque, 417 F.3d 1144, 1149

(10th Cir.2005);  Velasquez v. Frontier Med. Inc., 375 F. Supp. 2d 1253, 1271 (D.N.M.

2005)(Browning, J.).  The Tenth Circuit liberally defines what constitutes an adverse-employment

action.  See Sanchez v. Denver Public Schools, 164 F.3d 527, 532 (10th Cir. 1998).  As the Tenth

Circuit has stated:

> Such actions are not simply limited to monetary losses in the form of wages or
> benefits.  Instead, we take a case-by-case approach; examining the unique factors
> relevant to the situation at hand.  Nevertheless, we will not consider a mere
> inconvenience or an alteration of job responsibilities to be an adverse employment
> action.

Id. (internal quotation marks and citations omitted).

### 3.    Law on Claims for Hostile Work Environment.

"To establish a prima facie case of hostile work environment harassment, a plaintiff must

show that 'under the totality of circumstances [(i)] the harassment was pervasive or severe enough

to alter the terms, conditions, or privilege of employment, and [(ii)] the harassment was racial or

stemmed from racial animus.'"  Bloomer v. United Parcel Serv., Inc., 94 F. App'x 820, 825 (10th

Cir. 2004)(quoting Witt v. Roadway Express, 136 F.3d 1424, 1432 (10th Cir. 1998)).  See Carter

v. Mineta, 125 F. App'x 231, 238 (10th Cir. 2005); Mitchell v. City and County of Denver, 112 F.

App'x 662, 671 (10th Cir. 2004).  To establish a hostile-work environment claim, "a plaintiff must

show that a rational jury could find that the workplace is permeated with discriminatory

intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the

victim's employment and create an abusive working environment." Davis v. U.S. Postal Serv., 142

F.3d at 1341 (internal citations and quotations omitted).  "A discriminatory and abusive environment

must affect the employee's work environment so substantially as to make it intolerable for her to

continue." Creamer v. Laidlaw Transit, Inc., 86 F.3d 167, 170 (10th Cir.1996)(holding that a work environment did not contain "pervasive" harassment when the plaintiff made general allegations of frequent "sexual slurs" and the only specific incident cited to involved a co-worker grabbing the plaintiff).

"The mere utterance of a statement which 'engenders offensive feelings in an employee' would not affect the conditions of employment to a sufficient[ly] significant degree to violate Title VII.'" Gross v. Burggraf Construction Co., 53 F.3d 1531, 1537 (10th Cir.1995)(quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)(alteration in the original)).  To survive summary judgment, a plaintiff must demonstrate more than "'a few isolated incidents of racial enmity' or 'sporadic racial slurs.'" Chavez v. New Mexico, 397 F.3d 826, 832 (10th Cir. 2005)(quoting Bolden v. PRC, Inc., 43 F.3d 545, 551 (10th Cir. 1994)(internal citation omitted)).  "Instead, 'there must be a steady barrage of opprobrious racial comments.'"  Chavez v. Mexico, 397 F.3d at 832 (quoting Bolden v. PRC, Inc., 43 F.3d at 551).

The Tenth Circuit has stated  that "[p]ervasiveness and severity are independent and equal grounds" upon which a plaintiff may establish this element of a hostile environment claim. Witt v. Roadway Express, 136 F.3d at 1432 (addressing a hostile environment claim under 42 U.S.C. § 1981).  See also Aramburu v. Boeing Co., 112 F.3d 1398, 1410 (10th Cir. 1997) (citing Durham v. Xerox Corp., 18 F.3d 836, 838-39 (10th Cir. 1994), for the proposition that "standards and burdens under § 1981 are the same as those under Title VII ").  Moreover, the plaintiff must demonstrate that the work environment was objectively and subjectively offensive, but need "not demonstrate psychological harm, nor is she required to show that her work suffered as a result of the harassment." Walker v. United Parcel Service of Am., 76 F. App'x 881, 885 (10th Cir. 2003).  In

-24-

addition to all the circumstances, relevant considerations to determine if an environment is objectively hostile include: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998)(quoting Harris v. Forklift Systems, Inc., 510 U.S. at 21)(internal citations and quotations omitted).

## THE LAW UNDER THE REHABILITATION ACT

"The Rehabilitation Act of 1973 governs employee claims of handicap discrimination against the Federal Government." Barth v. Gelb, 2 F.3d 1180, 1183 (D.C. Cir. 1993). The Act prohibits employers from discriminating against or failing to accommodate employees who are disabled within the meaning of the Act, and creates a private right of action in favor of a qualified victim of such discrimination. See Detterline v. Salazar, 320 Fed.Appx. 853, 856 (10th Cir. 2009). "The Rehabilitation Act expressly incorporates and adopts the employment discrimination standards contained in Title I of the Americans with Disabilities Act, 42 U.S.C. § 12111, et seq. ("ADA")." See 29 U.S.C. § 791(g). Because of this relationship, "decisions under both Acts apply interchangeably to our analysis." Detterline v. Salazar, 320 F. App'x at 856 (quoting Vidacak v. Potter, 81 F. App'x 721, 723 (10th Cir. 2003)).

### 1.       Prima Facie Case of Disability Discrimination.

"The Rehabilitation Act prohibits discrimination against an 'otherwise qualified individual with a disability.'" McGeshick v. Principi, 357 F.3d 1146, 1149 (10th Cir. 2004)(quoting 29 U.S.C. § 794). To establish a prima-facie case of discrimination under the Rehabilitation Act, a plaintiff must show: (i) she is disabled under the Act; (ii) she is "otherwise qualified" for her position; (iii)

she works for a federal agency; and (iv) the agency has discriminated against her.  McGeshick v. Principi, 357 F.3d at 1150.

An employer can discriminate by failing to accommodate an employee's disability.  The Rehabilitation Act requires federal agencies to reasonably accommodate otherwise qualified employees, unless such an accommodation would create an undue hardship.  See 42 U.S.C. § 12112(b)(5)(A); 29 C.F.R. § 1630.9.  To establish a prima-facie case of failure to accommodate, a plaintiff must show: (i) she is disabled within the meaning of the Act; (ii) she is a "qualified" individual; (iii) the defendant was aware of her disability; (iv) she  needed an accommodation, meaning a causal relationship existed between the disability and the request for accommodation; and (v) the defendant failed to provide the necessary accommodation.  See Whitney v. Bd. of Educ. of Grand County, 292 F.3d 1280, 1285 (10th Cir. 2002)("If a mental limitation is not 'known' to the employer, then any failure to accommodate that limitation is not discrimination within the meaning of the ADA."); Taylor v. Pepsi-Cola Co., 196 F.3d 1106, 1109-11 (10th Cir. 1999); Massari v. Potter, No. 04-CV-02306-EWN-MJW, 2006 WL 318658, at *14 (D. Colo. Feb. 9, 2006).

### 2.    Establishing a Person is Disabled Within the Meaning of the Rehabilitation Act.

Thus, to establish either a disability-discrimination and or a failure-to-accommodate claim, a plaintiff must show she is a person with a disability within the meaning of the Act.  A person has a disability if he or she has "a physical or mental impairment that substantially limits one or more major life activities."  29 U.S.C. § 705(9)(B).[5]  See McGeshick v. Principi, 357 F.3d at 1150 ("[T]he

---

[5] Effective January 1, 2009, 29 U.S.C. § 705(9)(B) was amended to define disability "for the purposes of . . . subchapter[] . . . V . . . of this chapter [29 U.S.C. §§ . . . 790 et seq.]," i.e., for the purposes of the Rehabilitation Act, as "the meaning given in section 12102 of Title 42."  All events relevant to this case occurred before January 1, 2009.  The Court should therefore apply the statute as it existed before the amendments if applying the amended statute would affect substantive rights,

Rehabilitation Act . . . defines the term 'disabled' to mean 'a physical or mental impairment that

substantially limits one or more major life activities . . . .'")(quoting 29 U.S.C. § 705(9)(B)).  The

term "individual with a disability" also includes one who "has a record of such an impairment;

or . . . is regarded as having such an impairment."  29 U.S.C. § 705(20)(B).[6]  The impairment

therefore must limit a "major life activity," and the limitation must be "substantial."

 "A major life activity is a 'basic activity that the average person in the general population

can perform with little or no difficulty,'" Rakity v. Dillon Companies, Inc., 302 F.3d 1152, 1158

---

liabilities, or duties of a party, unless there exists a clear Congressional intent that the statute be
applied retroactively.  See Black v. M & W Gear Co., 269 F.3d 1220, 1228 n.3 (10th Cir. 2001)
("The presumption against retroactive application of a statute applies 'absent clear congressional
intent favoring' retroactive application of the new statute. . . . [a]nd it applies to amended statutes
as well as new statutes."); Lytes v. DC Water & Sewer Auth., 572 F.3d 936, 939-40 (D.C. Cir.
2009)(explaining that a court should not apply a statute to conduct occurring before its enactment
if to do so would "affect[] substantive rights, liabilities, or duties [on the basis of] conduct arising
before [its] enactment.")(quoting Landgraf v. USI Film Prods., 511 U.S. 244, 278 (1994)).  Because
applying the modified disability standards in this case could impose substantive liability on the
Defendant for conduct arising before the statute's enactment, see 572 F.3d at 939-40, and because
the Court has found no evidence in the statute or legislative history from which it can infer a
Congressional intent that courts apply the 2008 amendments retroactively, see Pub. L. No. 110-325,
122 Stat. 3553, 3559 (Sept. 25, 2008)(stating that "[t]his Act and the amendments made by this Act
shall become effective on January 1, 2009."), the Court will apply the statute as it existed at the time
of the Defendant's alleged unlawful conduct.  Cf. Cox v. Phelps Dodge Corp., 43 F.3d 1345, 1347
(10th Cir. 1994)(dismissing a plaintiff's appeal as moot because "she has no redressable injury under
Title VII as that statute existed at the time of the conduct in question.").  Moreover, both parties
implicitly assent to this conclusion by citing pre-amendment law, and neither party argues that the
Court should apply the new definition in this case.

 [6] Congress deleted this language in the 2008 amendment, but effectively the same provision
lives on in 42 U.S.C. § 12102(1).  See 42 U.S.C. § 12102(1) ("The term 'disability' means, with
respect to an individual . . . (A) a physical or mental impairment that substantially limits one or more
major life activities of such individual; (B) a record of such an impairment; or (C) being regarded
as having such an impairment (as described in paragraph (3)).").  Section 705(20)(B) of Title 29 now
directs readers to 42 U.S.C. § 12102 for its definition of "individual with a disability."  29 U.S.C.
§ 705(20)(B).  Again, the Court applies the statutory language as it existed at the time of the alleged
discriminatory conduct.  The parties do not address the "record-of" or "regarded-as" forms of
disability.

(10th Cir. 2002)(quoting <u>Pack v. Kmart Corp.</u>, 166 F.3d 1300, 1305 (10th Cir. 1999), <u>cert. denied</u>,

528 U.S. 811 (1999)), and includes "functions such as caring for oneself, performing manual tasks,

walking, seeing, hearing, speaking, breathing, learning, and working," 29 C.F.R. § 1630.2(i); 29

C.F.R. § 1630.2(j)(3), and sleeping, <u>see</u> <u>Pack v. Kmart Corp.</u>, 166 F.3d at 1305.[7]  <u>See</u> <u>also</u>

<u>Poindexter v. Atchison, Topeka & Santa Fe Ry. Co.</u>, 168 F.3d 1228, 1231-32 (10th Cir. 1999).

"Moreover, in determining how a particular impairment affects a particular plaintiff, the Court must

consider any corrective or mitigating measures taken by that individual." <u>Ragusa v. Malverne Union</u>

<u>Free Sch. Dist.</u>, 582 F. Supp. 2d 326, 341-42 (E.D.N.Y. 2008)(citing <u>Sutton v. United Air Lines,</u>

<u>Inc.</u>, 527 U.S. 471, 482-84 (1999)).[8]

 For a major life activity to be "substantially limited," "an individual must have an

impairment that prevents or severely restricts the individual from doing [the] activit[y]." <u>Toyota</u>

<u>Motor Mfg., Ky., Inc. v. Williams</u>, 534 U.S. 184, 185 (2002).  The regulations implementing the

ADA, and incorporated into the Rehabilitation Act, defines "substantially limits" as:

> (i) Unable to perform a major life activity that the average person in the general
> population can perform; or

---

[7] The amendment to 29 U.S.C. § 705, which took effect January 1, 2009, directed the reader to 42 U.S.C. § 12102 for its definition of disability.  Section 12012 also contains a larger list of "major life activities," which includes "sleeping . . . , thinking, communicating, and working."  42 U.S.C. § 12102(2)(A)(defining major life activities as including, but not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working").

[8] The Honorable Dennis Hurley, Senior United States District Judge for the Eastern District of New York, has noted that the 2008 amendments to the ADA superseded this aspect of the Supreme Court's decision in <u>Sutton v. United Air Lines, Inc.</u>  Judge Hurley also noted, however, as the Court has, that those amendments did not to go into effect until January 1, 2009.  <u>See</u> <u>Ragusa</u> <u>v. Malverne Union Free Sch. Dist.</u>, 582 F. Supp. 2d at 341 n.4.  For the reasons already mentioned, the Court applies the law as it was when the Defendant engaged in the challenged conduct.

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1).  The same regulation gives three factors to consider "in determining whether an individual is substantially limited in a major life activity: (i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment."  29 C.F.R. § 1630.2(j)(2).  See MacDonald v. Delta Air Lines, Inc., 94 F.3d 1437, 1444 (10th Cir. 1996).

Courts apply a special test to a plaintiff's claims that her major life activity of working is substantially limited.  "To demonstrate that an impairment 'substantially limits' the major life activity of working, an individual must show 'significant[ ] restrict[ion] in the ability to perform either a *class of jobs* or a *broad range of jobs in various classes* as compared to the average person having comparable training, skills and abilities.'" Bolton v. Scrivner, Inc., 36 F.3d 939, 942 (10th Cir. 1994)(quoting 29 C.F.R. § 1630.2(j)(3)(i))(emphasis in original).  "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i).  Three additional factors are relevant to the question whether an individual has a disability that substantially limits the major life activity of working:

(A) The geographical area to which the individual has reasonable access;

(B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or

(C) The job from which the individual has been disqualified because of an

impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

29 C.F.R. § 1630.2(j)(3)(ii).

## ANALYSIS

The Defendant argues that Minjarez failed to timely exhaust her administrative remedies, asserting that none of the discrete events of which Minjarez complains occurred within forty-five-days of her initial contact with the EEO division of the USPS on September 7, 2007, as required under 29 C.F.R. § 1614.105(a)(1). See Motion at 12-13. Minjarez responds that she "learned of the allegedly discriminatory act on August 31, 2007 . . . when she was given a modified job assignment in Anthony," within forty-five days of her initial contact with the EEO. Response at 6. Upon reviewing the parties' arguments and the relevant authorities, the Court agrees that Minjarez did not exhaust her administrative remedies in a timely fashion. By her own admissions, she did not contact the EEO division of the USPS within forty-five days of any allegedly discriminatory act. Minjarez admits that she was not discriminated against and that her alleged disability was accommodated after February 2007, and that any change to her employment status occurred by the time Minjarez started in her position at the Anthony Post Office in May of 2007.

The Defendant further argues that Minjarez has failed to create a genuine issue of material fact whether she was discriminated against on the basis of her race and her purported disability before she left her employment with the USPS. He argues that Minjarez cannot establish a prima-facie case of race discrimination and that she is not an individual with a disability for the purposes of the Rehabilitation Act. Minjarez responds she was discriminated against because she received less favorable treatment than similarly situated employees outside her protected status, and that the

-30-

Defendant failed to accommodate her PTSD.  Even if her claims were not barred for her failure to timely exhaust her administrative remedies, the Court agrees, upon reviewing the parties' arguments and the relevant authorities, that Minjarez failed to create a genuine issue of material fact whether she was discriminated against based on her race or her purported disability.  Minjarez offers only her unsupported belief that her supervisors were prejudiced against Caucasians, non-Hispanics.  The only action to which Minjarez points that could support a claim of discrimination is her loss of her Postmaster status, and the Defendant had a legitimate, non-discriminatory basis for its decision in that Minjarez' alleged disability prevented her from working in the position of Postmaster as she had before the purported robbery and assault.  Minjarez has not shown that there is a genuine issue of fact that the reason is pretextual.  Thus, it appears that the change in Minjarez' employment status was the result of accommodating her disability and not because of discrimination.  The Court further finds that Minjarez failed to establish that she was disabled within the meaning of the Rehabilitation Act, so she cannot establish a claim of disability discrimination or failure to accommodate.  The Court thus grants the Defendant's motion for summary judgment against Minjarez.

I.    **MINJAREZ FAILED TO EXHAUST HER ADMINISTRATIVE REMEDIES IN A TIMELY FASHION**.

Minjarez alleges the Defendant discriminated against her based on her race and disability. Before bringing a discrimination claim under Title VII or under the Rehabilitation Act in this Court, Minjarez must first timely exhaust her administrative remedies.  She failed to do so, and the Court grants the Defendant's Motion for Summary Judgment.

The Defendant argues that the Court lacks subject-matter jurisdiction over Minjarez' claims because she failed to exhaust her administrative remedies.  The Defendant argues that Minjarez' EEO Complaint lists discrete events, each of which must be administratively exhausted.  See Motion

at 12-13.  In her EEO Complaint, Minjarez complains of: (i) her loss of her Postmaster status on February 17, 2006; (ii) the offer of a full-time regular clerk job in October 2006 subject to her provision of a medical certification that she would be able to fully perform the duties of the offered position, which was then withdrawn on November 14, 2006; (iii) the failure to convert her to a full-time regular clerk when she obtained the position at the Anthony Post Office; and (iv), before May 18, 2007, not receiving reasonable accommodation from the USPS.  See Motion at 12 (citing Exhibit to Motion F, EEO Complaint of Discrimination in the Postal Service at 3-4, filed August 3, 2010 (Doc. 26-7)).  The Defendant further asserts that:

> Although there is a reference in Plaintiff's EEO Complaint to August 2007, it is clear that Plaintiff knew on November 14, 2006, that she was not being converted to a full time regular clerk.  And, she also was aware of the fact that her status had not been changed when she accepted the position with the Anthony, New Mexico, Post Office in May 2007.

Motion at 12-13 n.1.  The Defendant points out that Minjarez "cites to nothing in the record other than her

own self-serving statement, the EEO Dispute Resolution Specialist's (DRS) Inquiry Report, and her EEO Complaint of Discrimination in the Postal Service."  Reply at 5.  The Defendant further notes that Minjarez' statements in her EEO records are hearsay and do not constitute evidence which is admissible pursuant to rule 56.  See Reply at 5-6.

The Defendant argues that each instances of which Minjarez complains is a discrete act that must be administratively exhausted.  See Motion at 13 (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. at 115-17).  The Defendant notes, and Minjarez agrees, that Minjarez first contacted the EEO on September 7, 2007.  See Motion at 13; Response at 7.  Because 29 C.F.R. § 1614.105(a)(1) requires that plaintiffs bring their discrimination claims within forty-five days of the discriminatory

event, the Defendant asserts that any events before July 24, 2007, are not administratively exhausted. See Motion at 13.  The Defendant argues that, because each of the discrete events on which Minjarez bases her claims occurred before July 24, 2007, all those events are not timely administratively exhausted.  See Motion at 13.  The Defendant points out that Minjarez admits that she was not discriminated against and that her alleged disability was accommodated after she was transferred to the Anthony Post Office on May 26, 2007, and that Minjarez knew at the time of that transfer that she would not be converted to a full-time regular position.  See Reply at 6-7.  By these admissions, the Defendant asserts, Minjarez concedes that she failed to timely exhaust her administrative remedies.  See Reply at 7.  The Defendant argues that, in the face of these admissions, Minjarez cannot now create an issue of fact merely by her sworn statement and that for her " to say that something happened on August 31, 2007, is utterly without merit."  Reply at 7.  Because Minjarez failed to exhaust her administrative remedies in a timely fashion, the Defendant argues, the Court lacks jurisdiction over her claims, and dismissal is appropriate pursuant to rule 12(b)(1) of the Federal Rule of Civil Procedure.  See Motion at 13.[9]

Minjarez concedes that federal employees must exhaust their administrative remedies by filing a charge of discrimination with the EEO division of their agency, and that  they "must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action."  Response at 6

_____

[9] The Defendant further argues that Minjarez cannot establish a basis for equitable tolling under 29 C.F.R. § 1614.105(a)(2).  See Motion at 12 (citing Pacheco v. Rice, 966 F.2d 904, 906-907 (5th Cir. 1992)).  Minjarez does not respond to this assertion or argue for equitable tolling in this case, so the Court does not take up the issue.  The Court notes, however, that Minjarez has not alleged facts that suggest the "active deception" or "extraordinary circumstances" which the Tenth Circuit requires to establish equitable tolling and thus place the issue within the Court's discretion. See Montoya v. Chao, 296 F.3d at 957; Biester v. Midwest Health Servs., Inc., 77 F.3d at 1269 n.2.

(quoting 29 C.F.R. § 1614.105(a)(l)).  Minjarez argues, however,  that "[i]t is undisputed that Ms. Minjarez learned of the allegedly discriminatory act on August 31, 2007 when the Postal Service failed to reasonably accommodate her mental and physical disabilities when she was given a modified job assignment in Anthony, NM," and that "[t]he Defendant does not argue that Ms. Minjarez did not suffered [sic] an adverse employment action when on August 31, 2007, the Postal Service failed to reasonably accommodate her mental and physical disabilities when she was given a modified job assignment in Anthony, NM."  Response at 6, 8 (citing Minjarez' Declaration).

In her declaration, Minjarez asserts that, "[o]n August 31, 2007, the Postal [S]ervice failed to reasonably accommodate [her] mental and physical disabilities when [she] was given a modified job assignment in Anthony, NM."  Minjarez' Declaration ¶ 23, at 4.  Based on this assertion, Minjarez argues that her "initial contact with the EEO office of September 7, 2007" occurred within forty-five days of the "matter alleged."  Response at 7.  Thus, Minjarez argues, she exhausted her administrative remedies in a timely fashion.

The Court finds that Minjarez did not timely exhaust her administrative remedies, because Minjarez admits that she was not discriminated against on the basis of her race and that her alleged disability was accommodated from May 2007 until at least September 7, 2007, when she filed her complaint with the USPS' EEO.  A party who believes she has been discriminated against "must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action."  29 C.F.R. § 1614.105(a)(1).  Failure to do so bars the person from bringing suit in federal court.  Davis v. U.S.

Postal Serv., 142 F.3d at 1339; Wilson v. West, 962 F. Supp. at 944.[10]

When a defendant brings a motion to dismiss for lack of subject-matter jurisdiction under rule 12(b)(1) based on a plaintiff's failure to exhaust administrative remedies in a timely manner, a court "analyze[s] th[e] case under 12(b)(6) of the Federal Rules of Civil Procedure," unless a court considers materials outside the complaint, in which case "it should . . . treat[] [the] motion as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure." Douglas v. Norton, 167 F. App'x at 704-05. Because the Court considers the parties' stipulated facts in determining that Minjarez' claims are not timely administratively exhausted, it treats the Defendant's rule 12(b)(1) motion to dismiss as a motion for summary judgment.

Minjarez' admissions betray her assertion that she timely exhausted her administrative

_____

[10] Minjarez does not address the Defendant's argument that each complained of matter was a discrete event. Whether the incidents were discrete or part of a hostile work claim is of no moment unless there is a mix of exhausted and unexhausted claims. Under National Railroad Passenger Corp. v. Morgan, each discrete act of a discrimination claim must be administratively exhausted. See 536 U.S. at 114. "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice." National R.R. Passenger Corp. v. Morgan, 536 U.S. at 114. See Martinez v. Potter, 347 F.3d at 1211. If, however, a plaintiff brings a hostile work environment claim, only one of the acts needs to exhausted. See National Railroad Passenger Corp. v. Morgan, 536 U.S. at 115 (holding "that consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile work environment takes place within the statutory time period[]").

The Defendant argues that the events of which Minjarez complains are discrete events. See Motion at 12-13. In Minjarez' Complaint, however, she alleges that the Defendant created a "disability bias and hostile work atmosphere." Complaint at 6. Giving Minjarez the benefit of the doubt, as the Court must when ruling on a summary judgment motion, see Hunt v. Cromartie, 526 U.S. at 550-55, and reading this language to assert a hostile environment, however, does Minjarez no good. Because, as the Court explains below, Minjarez admits that no discrimination occurred within forty-five days of her initial EEO contact, none of the complained of events fell within forty-five-days of her initial EEO contact, and it makes no difference whether she complains of discrete acts or a hostile environment for the purposes of exhausting her administrative remedies.

remedies.   The Court agrees with the Defendant's calculation that the forty-five day filing requirement renders all events before July 24, 2007 untimely.  In the Plaintiff's Undisputed Facts, Minjarez admits that she was placed in the Anthony Post Office as an unassigned regular clerk in May 2007, and she remained in that Post Office until she was awarded disability retirement in May of 2008, although she had been on leave since approximately January 2008.  See Plaintiff's Undisputed Facts ¶ 22, at 8.  She further admits that, during the entire time she remained in the Anthony Post Office, she was not discriminated against on the basis of her race and that her alleged disability was accommodated.  See Plaintiff's Undisputed Facts ¶¶ 23-24, at 8.  Based on these admissions, the Court finds that, despite Minjarez' bald assertion to the contrary, no discrimination or failure to accommodate occurred in the forty-five days preceding her complaint to the EEO division of the USPS.

In addition to her admissions that she was not discriminated against during her time in Anthony, the record does not support Minjarez' assertions that she "learned of the allegedly discriminatory act on August 31, 2007 when the Postal Service failed to reasonably accommodate her mental and physical disabilities when she was given a modified job assignment in Anthony, NM."  Response at 6.  Any modifications to Minjarez' job assignment occurred by the time she started in Anthony.  Her position changed from Postmaster to part-time flexible clerk in February of 2006.  See Motion ¶ 7, at 3; Plaintiff's Undisputed Facts ¶ 7, at 6.  When she was placed in Anthony in May 2007, Minjarez was placed as an unassigned regular clerk, but in spite of the designation of unassigned regular clerk, Minjarez' position as a part-time flexible clerk was not changed.  See Motion ¶¶ 19-20, at 5; Plaintiff's Undisputed Facts ¶¶ 19-20, at 8.  The record does not reveal any other change to Minjarez' job assignment between May 2007 and when she filed her

complaint with the EEO division of the USPS on September 7, 2007.[11]

For the purposes of timely filing an EEO complaint, a "discriminatory act 'occurred' on the

---

[11] Even though Minjarez admitted that she was not discriminated against and her alleged disability was accommodated against after May of 2007, the Court has carefully searched the record for support of Minjarez' assertions "that Ms. Minjarez learned of the allegedly discriminatory act on August 31, 2007, when the Postal Service failed to reasonably accommodate her mental and physical disabilities when she was given a modified job assignment in Anthony, NM." Response at 6 (citing Minjarez' Declaration). Minjarez' Declaration offers no elaboration on her assertion. Her declaration offers only, in relevant part, "[o]n August 31, 2007, the Postal service failed to reasonably accommodate my mental and physical disabilities when I was given a modified job assignment in Anthony, NM." Minjarez' Declaration ¶ 23, at 4. Beyond Minjarez' sworn statement, the record is barren of support for her assertion that anything happened on August 31, 2007. When she was asked about her assertion in her deposition, Minjarez responded "that was in the time when they were not going to change me to an unassigned regular in the system, even though they were stating that I was on the modified job assignment form." Deposition of Glendora Minjarez at 11, filed August 3, 2010 (Doc. 26-1)("Deposition of Minjarez"). Her handwritten statement to the EEO suggests that she expected that her position would be changed to unassigned regular clerk, but that her husband was told that her position would not change sometime after July 4, 2007, but no date is provided in the statement indicating when her husband learned this information. EEO Complaint of Discrimination in the Postal Service at 4, filed August 3, 2010 (Doc. 26-7)("Minjarez' EEO Complaint"). Minjarez states that Otero, who was her contact for the matter, had stopped communicating with her by July 4, 2007.

At the hearing on September 15, 2010, Minjarez' attorney offered no additional insight, stating only:

> With respect to August 31st, 2007, Your Honor, it is what Ms. Minjarez alleges is that she was not reasonably accommodated. At that time she was given a modified job assignment essentially removing her as a post master position. Being assigned essentially a clerk position. So to the issue of timeliness, it is timely and therefore the matter should be proceeding. There's evidence in my response brief. I submitted a copy of the EEO dispute resolution report that puts the issue before this Court and before the EEOC matter.

Transcript of Hearing at 4:21-5:6 (taken September 15, 2010)(Lopez)(the Court's citations to the transcript refer to the court reporter's original, unedited version; any final transcript may contain slightly different page and/or line numbers). Contrary to Minjarez' attorney's assertion, as the Court explained earlier, no change was made to Minjarez's employment status on August 31 , 2007, and Minjarez was changed from Postmaster in February of 2006. Thus, even if it were to ignore her admissions, the Court finds no support for her assertions the she timely exhausted any of her administrative remedies.

day that it 'happened.'"   National R.R. Passenger Corp. v. Morgan, 536 U.S. at 110.[12]  Because all

allegedly discriminatory events happened more then forty-five days before Minjarez contacted the

EEO division at the USPS, the Court finds that Minjarez failed to timely exhaust her administrative

remedies, and that she is barred from bringing them before the Court.

II.     **MINJAREZ HAS FAILED TO SHOW A GENUINE ISSUE OF MATERIAL FACT
        WHETHER SHE WAS DISCRIMINATED AGAINST BASED ON HER RACE.**

        Minjarez asserts that she was discriminated against based on her race.  Because she offers

no evidence supporting this assertion, her claim fails.

        The Defendant argues that Minjarez cannot establish a prima-facie case of discrimination

under the burden-shifting framework established in McDonnell Douglas Corp. v. Green.  See

Motion at 17.  He asserts that, although Minjarez alleges that her race motivated his actions, she has

not forwarded any evidence supporting this contention.  See Motion at 17.  In her Complaint,

Minjarez names four individuals whom she asserts are Hispanic and/or Afro-American and

discriminated against her as a Caucasian, non-Hispanic female: Ross-Rawlins, Nunez, Otero, and

Montano.  See Motion at 4-5.  Minjarez' testimony, the Defendant argues, indicates that she cannot

explain who discriminated against her on the basis of her race and when.  See Reply at 8 (citing

Exhibit to Response, Deposition of Glendora Minjarez at 54:19-55:19; 56:8-57:14; 66:17-68:10;

72:3-20 (taken June 22, 2010)(Minjarez Depo.)).  The Defendant asserts that, when Minjarez was

asked specifically about Ross-Rawlins, she could offer only that Ross-Rawlins "limited her

alternatives to working."  Motion at 17-18.  The Defendant asserts that Minjarez testified similarly

_____

[12] Logic also dictates this result.  If an employee was able to toll the filing requirement by virtue of remaining in the state in which the allegedly discriminatory act placed her, then the clock would never run -- except perhaps against employers who later remedied the allegedly discriminatory act.

regarding Flores, who was not named in Minjarez' EEO Complaint.  The Defendant argues that such vague accusations, without more, do not support an inference of race discrimination.  See Motion at 18.  The Defendant asserts that Minjarez' only issue with Montano regarded Minjarez' demotion from Postmaster.  See id.  The Defendant further asserts that Minjarez' only issue with Nunez was that Nunez informed her that the USPS' offer to convert her to regular status had been withdrawn in November of 2006.  See id.  The Defendant asserts that Minjarez was uncertain whether Otero was Hispanic and primarily complained about Otero's alleged failure to communicate with her in July 2007.  See id.  The Defendant argues that, with the exception of Minjarez' change in status from Postmaster, none of these events either supports an inference of race discrimination or constituted an adverse action.  See id.  In sum, the Defendant argues that Minjarez' evidence "consists solely of her unsupported belief that these individuals were prejudiced against Caucasians, non-Hispanics which is insufficient to establish a prima facie case of discrimination."  id. (citing Aragon v. King Soopers, Inc., 19 F. App'x 806, 811 (10th Cir. 2001)).

The Defendant further argues that, with regard to the change in Minjarez' status from Postmaster, the USPS had a legitimate, non-discriminatory reason for changing her status.  Namely, Minjarez had been not functioning as a Postmaster since the purported robbery on March 11, 2004. See id. at 19-20.  The Defendant notes that Minjarez admits that, as of February 2006, she was incapable of performing the Postmater's duties.  See id. at 19.  The Defendant asserts that Minjarez' healthcare workers limited her to working only during the day on weekdays, and she initially could not interact with the public.  See id. at 19.  The Defendant further points out that Minjarez agreed to take a part-time flexible clerk position with the understanding that she would be considered for a full-time regular position, a position for which she was considered in November 2006, but which

her psychologist refused to approve for her.  See id. at 19.  Based on this event, the Defendant argues

it is implausible that Minjarez could still be able to remain a Postmaster.  See id. at 19.  Thus, the

Defendant alleges, the change in Minjarez' status was a result of the limitations that Minjarez'

alleged disability presented, and not race discrimination, and that Minjarez is unable to show there

is a genuine question of material whether the Defendant's reasons for his decision are pretextual.

See id. at 19 (citing  Jaramillo v. Colo. Judicial Dep't, 427 F.3d 1303, 1310 (10th Cir. 2005)(stating

that, as a general rule, a plaintiff must proffer evidence that shows each of the employer's

justifications are pretextual)).

        Minjarez responds that she was discriminated based on her race.  First, she asserts that she

can establish a prima-facie case of race discrimination.  She argues that the parties do not dispute

that she belongs to a protected class and that her allegations stem from her race, or that Minjarez was

qualified for the position, satisfying the first two requirements of establishing a prima facie-case of

discrimination under the Mcdonnell Douglas framework.  See Response at 8.  Minjarez further

asserts that she can establish that she suffered an adverse action, and that others outside her

protected class who were similarly situated were treated more favorable than she, which she argues

gives rise to an inference of unlawful discrimination.  See id. at 7-8 (citing Blow v. City of San

Antonio, 236 F.3d 293. 296-297 (5th Cir. 2001)).  For support of her assertion that she received less

favorable treatment than similarly situated employees outside her protected status, she cites, without

specifying a paragraph or page number, to Minjarez' Declaration.  See Response at 8.

        Minjarez further asserts that Ross-Rollins, Otero, Montano, Carpenter, and Flores are non-

Caucasians who supervised her at different times, and that "[t]hey all limit Ms. Minjarez [sic]

alternatives to working."  Response at 8.  Minjarez asserts Carpenter did not allow her to work up

to forty hours a week, and that Nunez withdrew a job bid which would have converted Minjarez to a regular position, guaranteeing Minjarez forty hours a week, holiday pay and a set work schedule and hours.  See Response at 8.  Minjarez argues these actions establish a prima-facie case of race discrimination.  See id.

The Court finds that Minjarez fails to show a genuine issue of material fact whether she was discriminated against based on her race.  Minjarez present no direct evidence that her employment status changed as a result of discrimination and does not argue that she presents such evidence.  See Hall v. U.S. Dep't of Labor, 476 F.3d at 855 ("Direct evidence is evidence, which if believed, proves the existence of a fact in issue without inference or presumption.").  Consequently, under the McDonnell Douglas burden shifting frame work, Minjarez must present circumstantial evidence that creates an inference of racial bias.  Minjarez must present evidence to the Court that one or more contradicted factual issues exist about the elements of the prima-facie case.  Minjarez has failed to do so.

To establish a prima-facie claim of disparate treatment based on race or national origin, a plaintiff must show: (i) she is a member of a protected class; (ii) she suffered an adverse-employment action, and (iii) similarly situated employees were treated differently.  See Orr v. City of Albuquerque, 417 F.3d at 1149; Velasquez v. Frontier Med. Inc., 375 F. Supp. 2d at 1271.  The parties do not appear to dispute that Minjarez is a member of a protected class -- Caucasian, non-Hispanic -- or that Minjarez' she suffered an adverse-employment action.

The Court agrees with the Defendant that Minjarez failed to establish a prima-facie case of race discrimination.  Minjarez asserts that she can establish that she suffered an adverse action, and that others outside her protected class who were similarly situated were treated more favorable than

she, which she argues gives rise to an inference of unlawful discrimination.  To survive a motion for summary judgment, Minjarez "may not rest on [her] pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." Vitkus v. Beatrice Co., 11 F.3d at 1539 ("However, the nonmoving party)(internal quotes omitted).  She must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which [she] carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d at 1241.  Rule 56 requires Minjarez to "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).  It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his [or her] pleadings." Anderson v. Liberty Lobby, Inc., 477 U.S. at 256.  Nor can Minjarez "avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation." Colony Nat'l Ins. Co. v. Omer, No. 07-2123, 2008 WL 2309005, at *1 (citing Fed. R. Civ. P. 56(e); Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d at 1199).  The only support Minjarez cites for her assertion that she received less favorable treatment than similarly situated employees outside her protected status is her declaration.  See Response at 8.  While she did not provide a paragraph or page number, the Court's careful review of Minjarez' Declaration and the entire record reveals that Minjarez never references non-Caucasian employees who received more favorable treatment than her.

As to Minjarez' attempt to establish a prima-facie case of race discrimination based on various supervisors of different ethnicities "all limit[ing] Ms. Minjarez [sic] alternatives to working," Response at 8, she presents no evidence to support an inference that these actions were the product of racial discrimination.  If a mere adverse employment action, without more, was

sufficient to establish an inference of race discrimination, then the second and third requirements

under the McDonnell Douglas framework would collapse into one.  A plaintiff must satisfy both

prongs.  See Munoz v. St. Mary-Corwin Hosp., 221 F.3d 1160, 1165 (10th Cir. 2000)(requiring that,

under the McDonnell Douglas framework, a member of a protected class show that an agency

action, practice or policy adversely affected  her employment situation; and that the action, practice

or policy occurred under circumstances giving rise to an inference of unlawful discrimination).

Even if Minjarez could establish a prima-facie case of racial discrimination, the Defendant

offers facially non-discriminatory justifications for changing Minjarez' employment status, which

Minjarez fails to show are pretextual.  Under the McDonnell Douglas framework, if Minjarez were

to establish a prima-facie case for any of her discrimination claims, "the burden shifts to the

defendant to come forward with a legitimate nondiscriminatory reason for its employment related

decision."  McDonnell Douglas Corp. v. Green, 411 U.S. at 802.  "Upon the employer's articulation

of a legitimate, nondiscriminatory reason . . . the presumption of discrimination established by the

prima facie case simply drops out of the picture."  Kelly v. City of Albuquerque, 375 F. Supp. 2d

at 1210 (internal quotations omitted).  Minjarez then must present evidence that the Defendant's

proffered reason for the employment decision was pretextual.  See id. (citing Kendrick v. Penske

Transp. Servs., Inc., 220 F.3d at 1230).

The Defendant offers a legitimate nondiscriminatory reason for changing Minjarez' status

from Postmaster: Minjarez had been not functioning as the Postmaster of the Post Office in San

Miguel, since the purported robbery on March 11, 2004, see Motion at 19-20, a position that

Minjarez admits she was incapable of performing as of February 2006, see Plaintiff's Undisputed

Facts ¶ 8, at 6-7.  The Defendant's reason for bypassing Minjarez for a position of mail processing

clerk regular in October 27, 2006, was because her healthcare providers refused to approve of her taking the position because of her limitations, as indicated in a letter dated July 26, 2006, from Dr. Meier, Minjarez' psychologist.  See Plaintiff's Undisputed Facts ¶ 10, at 7; Exhibit to Motion, Letter from Dolores F. Meier, Ph.D. to U.S. Postal Service at 2 (dated July 26, 2006).  Furthermore, Minjarez limited the positions she could work by requesting to work "daylight hours, certain numbers of hours per day, avoid customer contact, allow for breaks, avoid stressful environment, not to [sic] much variation and placed under a specific person for supervision."  Response at 15. Thus, the Defendant offers a facially non-discriminatory basis for the change in Minjarez' job status. Minjarez does not argue that the Defendant's justification is pretextual, and the Court finds no basis for suspecting pretext.  See Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997)("Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence and thence infer that the employer did not act for the asserted non-discriminatory reasons.").

Thus, under the McDonnell Douglas framework, Minjarez's race-based discrimination claim fails.  The Court finds it is without basis in the law or the facts of this case.  Because the Court finds that Minjarez failed to provide evidence creating a genuine issue of whether she was discriminated against based on her race, it finds that, even if her claims were not barred by her failure to timely exhaust her administrative remedies, her Title VII claim would not survive summary judgment.

## III.   MINJAREZ HAS FAILED TO SHOW A GENUINE ISSUE OF MATERIAL FACT WHETHER SHE WAS DISCRIMINATED AGAINST BASED ON HER DISABILITY.

Minjarez also claims the Defendant discriminated against her because she was disabled and

that the Defendant failed to accommodate her disability.  Because she fails to establish a genuine issue of material fact whether she is disabled within the meaning of the Disability Act, the Court finds Minjarez' claims of disability discrimination and failure to accommodate would fail to survive summary judgment, even if they had been timely administratively exhausted.

The Defendant argues that Minjarez was not disabled within the meaning of the Rehabilitation Act.  In the alternative, the Defendant argues that he neither discriminated against her because of her disability, nor failed to accommodate her.  See Motion at 26.  To establish a prima-facie case of either discrimination or failure to accommodate under the Rehabilitation Act, Minjarez must show that she was disabled within the meaning of the Act.  The Defendant argues that Minjarez has not established that she was disabled within the meaning of the Rehabilitation Act.  The major life activities she asserts have been limited are: sleeping, thinking, working, and being withdrawn at times and unable to communicate with others as before the purported assault and robbery.  See Exhibit to Motion, Plaintiff's Answers to Defendant's First Set of Answer to Interrogatories No. 2, at 2, filed August 3, 2010 (Doc. 26-5)("Answer to Interrogatories").  The Defendant argues that, "other than indicating that she cannot sleep without medication, [Minjarez] has forwarded no specific evidence to establish that her 'sleep problems were severe, long term, or had a permanent impact.'" Motion at 24 (quoting Doyal v. Okla. Heart, Inc., 213 F.3d 492, 498 (10th Cir. 2000) (quoting Pack v. Kmart Corp., 166 F.3d at 1306).  The Defendant further argues that Minjarez' assertion that she is "not always" able to concentrate or focus does not establish that a major life activity has been severely impaired within the meaning of the Rehabilitation Act.  See Motion at 24.  To the contrary, the Defendant argues, the use of "not always" implies that Minjarez' symptom is episodic in nature.  See Motion at 24.

With regard to working, the Defendant argues that Minjarez has failed to show that her PTSD significantly restricted her "ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." Motion at 24 (quoting 29 C.F.R. § 1630.2(j)(3)(i)(internal quotation marks omitted)). The Defendant also asserts that, while Minjarez asserts she is unable to go into public areas without being hypervigilant, "she was able to work in the non-public portions of the post offices at which she was employed and eventually was able to perform window service work as well." Motion at 25. Based on this fact, the Defendant argues that Minjarez was not substantially impaired in the major life activity of working, because "[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." Motion at 25 (quoting 29 C.F.R. § 1630(2)(j)(3)(i))(internal quotation marks omitted).

Minjarez responds that she is disabled within the meaning of the Rehabilitation Act. She asserts that she was robbed and assaulted while working as the Postmaster at the San Miguel Post Office, and that "[t]his assault caused Ms. Minjarez severe physical and mental injuries and disabilities which affected her ability to perform her work." Response at 12-13. She asserts that "[h]er impairment is long-term/permanent in nature." Id. at 13 (citing Minjarez' Declaration). Citing only her declaration, Minjarez argues that she has presented evidence "that Ms. Minjarez suffers from stress, anxiety and PTSD," and states that "[c]ertainly, Ms. Minjarez' physical/mental impairments substantially limit her ability to work." Response at 13. In Minjarez' Declaration, she offers only this to support her claim: "I suffer from stress, anxiety and Post Traumatic Stress Disorder (PTSD)." Minjarez' Declaration ¶ 24, at 4.

The Court finds that Minjarez fails to establish a material question of fact whether she was

disabled within the meaning of the Rehabilitation Act.  A person has a disability for the purpose of

the Rehabilitation Act if he or she has "a physical or mental impairment that substantially limits one

or more major life activities."  29 U.S.C. § 705(9)(B).[13]  "An inquiry into whether a plaintiff is

substantially limited in a major life activity requires an individualized analysis because an

impairment that is disabling for some may not be disabling for others."  Doyal v. Okla. Heart, Inc.,

213 F.3d at 496.  See Brown v. BKW Drywall Supply, Inc., 305 F. Supp. 2d 814, 829 ("[M]any

medical conditions do not qualify as disabilities for purposes of the ADA.").   "An individualized

assessment of the effect of an impairment is particularly necessary when the impairment is one

whose symptoms vary widely from person to person."   Toyota Motor Mfg., Kentucky, Inc. v.

Williams, 534 U.S. at 199.  "[A]ny impairment that only moderately or intermittently prevents an

individual from performing major life activities is not a substantial limitation under the Act."

DiCarlo v. Potter, 358 F.3d 408, 419 (6th Cir. 2004)(quoting Mahon v. Crowell, 295 F.3d 585,

590-91 (6th Cir. 2002)).

Minjarez asserts that she is disabled because she suffers from stress, anxiety, and PTSD.

Answer to Interrogatories No. 1, at 2.  She asserts that her disability limits four major life activities:

(i) sleeping; (ii) working; (iii) thinking; and (iv) being "[w]ithdrawn a [sic] times and unable to

communicate with others as before."  Id. No. 2, at 2.[14]  Both sleeping and working are major life

---

[13]Again, the Court refers to the version of 29 U.S.C. § 705 that was in effect at the time of
the alleged discrimination, rather than the amended version which took effect on January 1, 2009.
See Ragusa v. Malverne Union Free Sch. Dist., 582 F. Supp. 2d at 341 n.4.

[14] The Court analyzes only whether Minjarez is substantially limited in the major life
activities of working, sleeping, thinking, and communicating/interacting with others, because "in
making determinations of law [a deciding court] is to analyze only the major life activity asserted
by the plaintiff."  Doyal v. Oklahoma Heart, Inc., 213 F.3d at 496 (quoting Poindexter v. Achison,
Topeka & Santa Fe Ry. Co., 168 F.3d at 1231-32). "[W]hether a claimed affliction constitutes an

activities, the substantial impairment of which would constitute a disability under the Rehabilitation Act.  See Poindexter v. Atchison, Topeka & Santa Fe Ry. Co., 168 F.3d at 1231-32 (working); Pack v. Kmart Corp., 166 F.3d at 1305 (sleeping); 29 C.F.R. § 1630.2(i).  The United States Court of Appeals for the Tenth Circuit has "not decided whether thinking and interacting with others are recognized major life activities."  Lanman v. Johnson County, Kan., 393 F.3d 1151, 1157 (10th Cir. 2004)(citing Doyal v. Okla. Heart, Inc., 213 F.3d at 496 (both); Steele v. Thiokol Corp., 241 F.3d 1248, 1255 (10th Cir. 2001)(interacting with others)).  Even assuming that thinking and interacting or communicating with others are major life activities, Minjarez fails to show that hers are substantially impaired.

For a court to find that a plaintiff is "substantially limited" in performing a major life activity, "an individual must have an impairment that prevents or severely restricts the individual from doing [the] activit[y]."  Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. at 185.  A substantial limitation is defined as a "[s]ignificant[] restrict[ion] as to the condition, manner, or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity."  29 C.F.R. § 1630.2(j)(1)(ii).

> ### A.   MINJAREZ HAS FAILED TO DEMONSTRATE A GENUINE ISSUE OF MATERIAL FACT WHETHER HER PTSD SUBSTANTIALLY LIMITS HER ABILITY TO SLEEP.

---

impairment under the ADA [or the Rehabilitation Act] and whether the identified endeavor constitutes a major life activity are determinations of law for the court to decide."  Poindexter v. Atchison, Topeka & Santa Fe Ry. Co., 168 F.3d at 1230.  The fact finder determines whether the plaintiff is disabled, i.e., whether her "major life activities" are "substantially limited."  Kellogg v. Energy Safety Services Inc., 544 F.3d 1121, 1127 (10th Cir. 2008).  Here, the Court must also decide if Minjarez "presented evidence from which a rational jury could find that she was substantially limited."  Johnson v. Weld County, Colo., 594 F.3d 1202, 1218 (10th Cir. 2010)

The Tenth Circuit provides a high bar for a plaintiff seeking to establish a disability through a psychological impairment that substantially limits her ability to perform the major life activity of sleep, as demonstrated by the Tenth Circuit's holding in <u>Doyal v. Oklahoma Heart, Inc.</u> Carol Doyal was an employee of Oklahoma Heart, a cardiology practice group. <u>See</u> 213 F.3d at 494. Oklahoma Heart steadily grew over time, and Doyal's responsibilities likewise grew, until she began experiencing "significant feelings of helplessness, anxiety, excessive stress and lack of motivation," and insomnia, among other symptoms. <u>Id.</u> Her insomnia at one point limited her to sleeping only one to three hours per night. <u>See id.</u> at 494-95. Oklahoma Heart fired Doyal, citing as its reasoning her "inability to make decisions and her lapses of memory, judgment, and confidentiality." <u>Id.</u> at 495. Doyal brought a claim of disability discrimination under the ADA, which shares its definition of disability with the Rehabilitation Act.

Oklahoma Heart moved for summary judgment, and the district court granted the motion. <u>See</u> 213 F.3d at 495. The Tenth Circuit affirmed the district court's grant of summary judgment, notwithstanding testimony that Doyal had insomnia and sometimes slept only one to three hours each night. In doing so, the Tenth Circuit noted passages from a sworn declaration that Doyal filed, in which she said: "I began taking medication to help me sleep. Sometimes the medication would help and sometimes it didn't." <u>Id.</u> at 497. Her declaration also stated that, in response to taking the sleep medication, she would sometimes take too much and sleep up to fourteen hours in a night. <u>See id.</u> The Tenth Circuit concluded:

> [T]he evidence here showed that Doyal suffered at times from insomnia. As was true in <u>Pack [v. Kmart Corp.,]</u> the evidence showed that Doyal's problems were mitigated, though not cured, by medication. Moreover, the evidence here showed that, by the time of Doyal's discharge, she was sleeping as much as fourteen hours a night. While excessive sleepiness may pose another problem, the fact that Doyal was sleeping for such long periods precludes an inference that her insomnia was

severe, permanent, and untreatable enough to support a reasonable conclusion that
she was significantly restricted in her ability to sleep.

213 F.3d at 498.

In Pack v. Kmart Corp., the Tenth Circuit addressed another plaintiff's argument that his

sleep was substantially limited.  In Pack v. Kmart Corp., Teresita Pack presented the following

evidence, as the Tenth Circuit recounted it:

> At trial, Pack testified that in January, 1995, "[s]ometimes I would go off into --
> finally go to sleep and I would wake up shaking, crying, nervous, upset.  I would be
> up for two or three hours before I could go back to sleep again.  Sometimes I
> wouldn't get but maybe two, three hours at the most sleep all night long. [sic] I
> would toss and turn all night long."  The only other evidence of Pack's ability or
> inability to sleep is found in Dr. Koduri's medical notes.  On July 8, 1994, in her
> initial consultation with Dr. Koduri, Pack complained of "decreased sleep with
> increased latency, moving frequently in her sleep, [and] not feeling fresh when
> waking up in the morning, . . . ."  On July 11, 1994, Dr. Koduri noted that Pack was
> "[s]till having significant problem with sleep, up until 2 or 3 in the morning."  On
> July 22, 1994, Dr. Koduri noted Pack "says that she was feeling extremely drowsy,
> sleepy all the time."  On July 29, 1994, Dr. Koduri noted Pack "doesn't feel as
> drowsy as she used to, her sleep is getting better, and even her husband has
> commented on her improvement."  On August 17, 1994, Dr. Koduri cut back Pack's
> evening medication because it "makes her too sleepy."  There are no further
> notations regarding sleep until November 21, 1994, when Dr. Koduri noted Pack had
> been having erratic sleep patterns and discussed with her the need for a structured
> sleep pattern.  Finally, on December 5, 1994, Dr. Koduri noted Pack's "sleep is
> improving a little bit."

Pack v. Kmart Corp., 166 F.3d at 1306 (internal citations omitted).  The Tenth Circuit found this

evidence was insufficient to establish that Pack's impairment substantially limited her ability to

sleep.

> While the evidence showed Pack had episodes of sleep disruption and/or waking
> without feeling rested during 1994 and January 1995, there is no indication that her
> sleep problems were severe, long term, or had a permanent impact.  Pack failed to
> satisfy her burden to present evidence of her impairment and the extent to which the
> impairment limited her major life activity of sleeping.

Pack v. Kmart Corp., 166 F.3d at 1306.

In contrast to the plaintiffs in Doyal v. Oklahoma and Pack v. Kmart Corp. who presented evidence that they were sleeping as little as three hours per night, Minjarez testifies only that she "cannot sleep without medication." If Doyal and Pack's sleep difficulties did not do not rise to the level of a substantial limitation, then Minjarez' mere need to take medicine to sleep does not. Furthermore, Minjarez appears to be able to treat her sleep problems with medicine, see Answer to Answer to Interrogatories No. 2, at 2, giving "no indication that her sleep problems were severe, long term, or had a permanent impact," Pack v. Kmart Corp., 166 F.3d at 1306.

Significantly, the only evidence that Minjarez presents that her sleep is impaired is that she takes mediation. Taking medication, however, is not a substantial limitation. In Doyal v. Oklahoma Heart, Inc., the Tenth Circuit found, on the contrary, that medication mitigated the limitations on Doyal's and Pack's sleep problems. See Doyal v. Oklahoma Heart, Inc., 213 F.3d at 498 ("[T]he evidence showed that Doyal's problems were mitigated, though not cured, by medication."); Pack v. Kmart Corp., 166 F.3d at 1306-07 ("In addition, we evaluate whether a physical or mental impairment is substantially limiting in a major life activity while taking into consideration any mitigating or corrective measures utilized by the individual, such as medications." (citation omitted)). "[I]f a person is taking measures to correct for, or mitigate, a physical or mental impairment, the effects of those measures -- both positive and negative -- must be taken into account when judging whether that person is 'substantially limited' in a major life activity and thus 'disabled' under the Act." Sutton v. United Air Lines, Inc., 527 U.S. at 482. Thus, taking medicine may militate against finding that Minjarez' sleep is substantially impaired. Minjarez, however, does not present any information about the effectiveness of her medication.

Because she asserts only that she needs medicine to sleep, Minjarez presents no evidence that

indicates her sleep was impaired, much less evidence "that her sleep problems were severe, long term, or had a permanent impact." Pack v. Kmart Corp., 166 F.3d at 1306. Because Minjarez presents no evidence about the nature or duration of her sleep problem, she has not shown a genuine issue of material fact that her alleged disability substantially limited her ability to sleep. Having reviewed all the arguments and evidence that Minjarez presented, the Court finds she fails to establish a genuine question of material fact that she was substantially limited in her ability to sleep.

**B.  MINJAREZ HAS FAILED TO SHOW A GENUINE FACTUAL ISSUE WHETHER HER ALLEGED DISABILITY SUBSTANTIALLY LIMITS HER ABILITY TO WORK.**

Minjarez also asserts that her alleged disability limited her ability to work. Answer to Interrogatories No. 2, at 2. "[T]o demonstrate that an impairment 'substantially limits' the major life activity of working, an individual must show 'significant[] restrict[ion] in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." Bolton v. Scrivner, Inc., 36 F.3d at 942 (quoting 29 C.F.R. § 1630.2(j)(3)(i))(emphasis in original). On the other hand, "[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i). See Murphy v. United Parcel Serv., Inc., 527 U.S. 516, 523 (1999)("[T]o be regarded as substantially limited in the major life activity of working, one must be regarded as precluded from more than a particular job.").

In her Response, Minjarez' entire argument that her alleged disability substantially limits her ability to work is the following: "Evidence has been presented that Ms. Minjarez suffers from stress, anxiety and PTSD. Certainly, Ms. Minjarez' physical/mental impairments substantially limit her ability to work." Response at 13 (citing Minjarez' Declaration). The Court does not share Minjarez'

certainty.  In answering the Defendant's interrogatory asking Minjarez to state "[w]hich major life activities you assert are limited; and, in what manner," for her limitation on work, Minjarez only alleges that she is "[u]nable to go into public areas without being hypervigilant."  Answer to Interrogatories No. 2, at 2.  As the Defendant points out, Minjarez "was able to work in the non-public portions of the post offices at which she was employed and eventually was able to perform window service work as well."  Motion at 25.

To the Court's knowledge, no court has found that hypervigilance is a substantial limitation, and hypervigilance does not appear on its face to significantly restrict Minjarez' "ability to perform either a <u>class of jobs</u> or a <u>broad range of jobs in various classes</u> as compared to the average person having comparable training, skills and abilities." <u>Bolton v. Scrivner, Inc.</u>, 36 F.3d at 942.  The Court does not believe that "jobs requiring a lack of hypervigilance" is a class of jobs as the drafters of 29 C.F.R. § 1630.2(j)(3)(i) intended, and likewise does not believe that "jobs requiring a lack of hypervigilance" is a broad range of jobs in various classes.  <u>Murphy v. United Parcel Serv., Inc.</u>, 527 U.S. at 524-25 ("The evidence that petitioner is regarded as unable to meet the [Department of Transportation] regulations is not sufficient to create a genuine issue of material fact as to whether petitioner is regarded as unable to perform a class of jobs utilizing his skills."); <u>Sutton v. United Air Lines, Inc.</u>, 527 U.S. at 492 ("To be substantially limited in the major life activity of working, . . . one must be precluded from more than one type of job, a specialized job, or a particular job of choice."); <u>Detterline v. Salazar</u>, 320 F. Appx. at 857 ("A 'class' of jobs is a set of jobs 'utilizing similar training, knowledge, skills or abilities,' while a 'broad range of jobs' refers to a number of dissimilar jobs which a plaintiff is unable to perform.")(quoting <u>EEOC v. Heartway Corp.</u>, 466 F.3d 1156, 1164 (10th Cir. 2006)).

In her declaration, Minjarez states that she "requested a that [sic] I work daylight hours, certain numbers of hours per day, avoid customer contact, allow for breaks, avoid stressful environment, not to much variation and placed under a specific person for supervision." Minjarez' Declaration ¶ 30, at 4. Assuming that Minjarez is attempting to argue that this request is the result of her alleged disability, these conditions still fail to exclude Minjarez from a broad range or class of jobs. In Vidacak v. Potter, the United States Court of Appeals for the Tenth Circuit affirmed a district court's grant of summary judgment against a USPS employee with inflammatory arthritis for failing to show he was substantially limited in his ability to work because he requested to not work at night and to have two consecutive days off. See 81 F. App'x at 724. The Tenth Circuit held:

> Here, plaintiff's restrictions -- that he could not work at night and required two consecutive days off -- did not preclude him from performing most jobs. See Sutton v. United Air Lines, Inc., 527 U.S. 471, 492 (1999)("[I]f a host of different types of jobs are available, one is not precluded from a broad range of jobs."). Other circuits have reached this conclusion when considering similar situations. See Colwell v. Suffolk County Police Dep't, 158 F.3d 635, 644-45 (2nd Cir. 1998)(holding that police officer who was restricted to a regular schedule of indoor daytime shifts was not substantially limited in the major life activity of working); Kellogg v. Union Pac. R.R. Co., 233 F.3d 1083, 1087-88 (8th Cir. 2000)(affirming summary judgment because employee who could not work more than forty hours per week was not substantially limited in his ability to work); Baulos v. Roadway Express, Inc., 139 F.3d 1147, 1151-53 (7th Cir. 1998)(holding that truck drivers whose sleep disorders precluded them from performing sleeper duty did not possess a substantial limitation on their ability to work and thus were not disabled).

81 F. App'x at 724.

Minjarez requests similar accommodations as the plaintiff in Vidacak v. Potter, and like that plaintiff, Minjarez is not precluded from performing most jobs. Notably, many of the office jobs in the United States offer day time hours, weekends off, little public contact, low stress, and a consistent supervisor.

Moreover, Minjarez testified that she resumed having customer contact in 2006 under her doctor's direction. Minjarez Depo. at 73:13-25. The temporary nature of this limitation does not indicate that it is "severe, long term, or had a permanent impact." Pack v. Kmart Corp., 166 F.3d at 1306. "[T]emporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities." 29 C.F.R. pt. 1630 app., § 1630.2(j). In Pack v. Kmart Corp., the Tenth Circuit did not find a substantial limitation where "the evidence showed Pack had episodes of sleep disruption and/or waking without feeling rested during 1994 and January 1995." 166 F.3d at 1306.

In the Tenth Circuit, it is Minjarez' burden to show that the collection of jobs from which her impairment excludes her are a "class of jobs" or "broad range of jobs" under the Rehabilitation Act. Dillon v. Mountain Coal Co., 569 F.3d 1215, 1220 (10th Cir. 2009)("[T]here was no evidence that . . . the jobs within the mine [which the plaintiff could not perform] could properly be characterized as a 'class of jobs' or a 'broad range of jobs.'"). Minjarez has not put forward evidence to show that her impairment prevents her from performing a broad range or class of jobs.[15]

_____

[15] The Court notes that Minjarez' failure to provide evidence addressing his "vocational training, the geographic area to which he has access, or the number and type of jobs demanding similar training from which [she] would also be disqualified," could, without more, be fatal to Minjarez' claim of disability based on substantial limitation to his ability to work. In Zwygart v. Bd. of County Comm'rs of Jefferson County, Kan., 483 F.3d 1086 (10th Cir. 2007), the Tenth Circuit stated:

> In at least three cases, we have affirmed a district court's dismissal of an employee's ADA claim because the employee failed to provide a single document or record helpful in addressing his vocational training, the geographical area to which he has access, or the number and type of jobs demanding similar training from which he would also be disqualified.

483 F.3d at 1092 (internal quotation marks and alterations omitted)(citing Rakity v. Dillon Companies, Inc., 302 F.3d at 1162; Bolton v. Scrivner, Inc., 36 F.3d at 944; Selenke v. Med.

Additionally, she has not provided the Court with vocational reports that are routinely seen in these cases.

Applying the factors in 29 C.F.R. § 1630.2(j)(3)(ii) to the facts in this case further demonstrates that Minjarez' alleged disability does not create a substantial limitation on her ability to work. The regulation provides three factors courts consider in determining whether a plaintiff's impairment substantially limits her ability to work:

(A) The geographical area to which the individual has reasonable access;

(B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or

(C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

29 C.F.R. § 1630.2(j)(3)(ii).

The first factor supports finding no substantial limitation. Minjarez presents no evidence that she was limited to a particular geographical area. She appears, moreover, to have had reasonable access to a relatively large geographic area during the relevant time frame. Between the purported robbery and assault on March 11, 2004, and September 7, 2007, she was able to work in several New Mexico locations -- Anthony, Albuquerque, Fairacres, Las Cruces, and Sunland Park -- a geographic area of over two-hundred-and-fifty miles. See Complaint ¶¶ 15-18, 22, at 3-4.

---

Imaging of Colo., 248 F.3d 1249, 1257 (10th Cir. 2001)). The Court will nevertheless attempt to discern whether Minjarez demonstrated a genuine issue of material fact whether she is substantially limited in the major life activity of working.

Based on Minjarez' answer to the Defendant's interrogatory, she would be only be disqualified from jobs that require a lack of hypervigilance in public.  As the Court noted above, it is uncertain what jobs that would be.  Even allowing that the accommodations she requested in her declaration are limitations her disability imposes on her ability to work, Minjarez would be disqualified from working jobs that require evening or overnight work, or which do not offer weekends off.  As the Tenth Circuit held in Vidacak v. Potter, this restriction would "not preclude [Minjarez] from performing most jobs."  Vidacak v. Potter, 81 F. App'x at 724.  Because Minjarez fails to provide any evidence that she is disqualified from any type or range of jobs, the Court concludes that she has failed to create a genuine issue of material fact whether she suffers from an impairment that substantially limits her in the major life activity of working.

### C.   MINJAREZ HAS FAILED TO SHOW A GENUINE FACTUAL ISSUE WHETHER HER ALLEGED DISABILITY SUBSTANTIALLY LIMITS HER ABILITY TO THINK OR COMMUNICATE WITH OTHERS

Minjarez also claims that her alleged disability limits her ability to think and communicate with others.  See Answer to Interrogatories No. 2, at 2.  While the United States Court of Appeals for the Tenth Circuit has "not decided whether thinking and interacting with others are recognized major life activities," Lanman v. Johnson County, Kan., 393 F.3d at 1157 (citing Doyal v. Okla. Heart, Inc., 213 F.3d at 496 (both); Steele v. Thiokol Corp., 241 F.3d at 1255 (interacting with others)), assuming, without deciding, that thinking and communicating with others are major life activities, Minjarez fails to show these life activities are substantially impaired.

Minjarez asserts that her disability limits her major life activity of thinking because she is "[n]ot always able to concentrate or focus."  Answer to Interrogatories No. 2, at 2 (emphasis added).  She also asserts that her disability limits her interactions with others because she is "[w]ithdrawn

a[t] times and unable to communicate with others as before." Id. (emphasis added)  Setting aside

that Minjarez entirely fails to elaborate on these statements, and that the Court doubts the experience

of occasionally having trouble concentrating or feeling withdrawn are something an "average person

in the general population" does not experience, see 29 C.F.R. § 1630.2(j)(1)(ii), both of these

assertions fail because having limitations "at times" or "not always," Answer to Interrogatories

No. 2, at 2, is insufficient to establish a substantial limitation, see Croy v. Cobe Labs., Inc., 345 F.3d

1199, 1204 (10th Cir. 2003)(affirming summary judgment when plaintiff established only that she

was often temporarily unable to function as the average person would, due to multiple sclerosis).

In Corley v. Dept. of Veterans Affairs ex rel. Principi, 218 F. App'x 727 (10th Cir. 2007),

the Tenth Circuit affirmed summary judgment against a plaintiff whose epilepsy intermittently

limited his major life activities because intermittent impairments cannot be permanent and long

term.  The Tenth Circuit stated:

> Mr. Corley's evidence certainly establishes that at times he experienced more
> frequent seizure activity. And in the case of the four months before the alleged
> discriminatory act, his testimony indicates that he was having more seizures than in
> the preceding months of that year. But the evidence as a whole, including his own
> testimony about the total number of seizures he experienced during his employment
> with the VA, does not establish a triable fact issue regarding whether his impairment
> substantially restricted his sleeping.  There is insufficient evidence to support his
> contention that his impairment resulted in permanent, or even long-term, effects on
> his ability to sleep as compared to the average person in the general population.  As
> the district court concluded, such intermittent effects on a major life activity are
> insufficient to establish an impairment that qualifies as a disability. See Pack, 166
> F.3d at 1306 (affirming grant of judgment as a matter of law when plaintiff's
> evidence of episodes of sleep disruption failed to establish her problems were severe,
> long-term, or had a permanent impact); see also McWilliams v. Jefferson County,
> 463 F.3d 1113, 1116-17 (10th Cir. 2006) (affirming summary judgment when
> evidence showed only intermittent depressive episodes that caused difficulty
> sleeping and getting along with co-workers).

218 F. App'x at 736.  Just as Corley's episodic limitations could not establish a substantial

limitation, Minjarez' "not always" being able to concentrate and being withdrawn "at times" does not "establish her problems were severe, long-term, or had a permanent impact." Id. Because Minjarez' assertions fail to establish a substantial limitation even assuming thinking and interacting with others are major life activities, she has failed to create a material question of fact that should go forward to trial.

Minjarez bears the burden of "setting forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof," Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d at 1241, and she failed to put forward evidence that would satisfy that burden.[16] Consequently, the Court finds that even if her claims were

---

[16] While Minjarez does not make the argument, the Court notes that Minjarez being awarded disability retirement in May of 2008 under the Federal Employees Retirement System ("FERS") is not evidence that she was disabled within the meaning of the Rehabilitation Act. The standards used by the Office of Personnel Management ("OPM") under FERS previously led this Court to "reject[] this [FERS award] as sufficient to show a genuine issue of material fact whether [a plaintiff] is disabled under the Rehabilitation Act."

> The standard for determining disability under the Rehabilitation Act and the ADA is different from that for determining disability for the purpose of the OPM or the SSA. The OPM allows a federal employee to be awarded Federal Employees Retirement System disability when the employee becomes unable, because of disease or injury, to perform "useful and efficient service in [his or her] current position," or in another position within the same agency and commuting area. See OPM.gov, FERS Disability, http://www.opm.gov/retire/pre/fers/disability.asp#Eligibility (last visited May 18, 2010). Disability under the Rehabilitation Act, on the other hand, is concerned with the plaintiff's ability -- or others' perception of the plaintiff's ability -- to perform major life activities. While one major life activity under the Rehabilitation Act is "working," see 29 C.F.R. § 1630.2(j)(3), the ability to work is not substantially limited unless the plaintiff is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person," 29 C.F.R. § 1630.2(j)(3)(i). See Bolton v. Scrivner, Inc., 36 F.3d at 942. The OPM is interested in an employee's ability to usefully and efficiently perform the services or his or her current position, or other positions in the same agency and commuting area.

timely administratively exhausted, they would fail to survive summary judgment.

**IT IS ORDERED** that the Defendant's Motion to Dismiss and/or for Summary Judgment,

filed August 3, 2010 (Doc. 26), is granted.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Enrique Lopez
Law Office of Enrique Lopez
El Paso, Texas

  *Attorney for the Plaintiff*

Kenneth J. Gonzales
 United States Attorney
Phyllis A. Dow
 Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

  *Attorneys for the Defendant*

---

DeSantis v. Napolitano, 2010 WL 2292592, No. CIV 08-1205 JB/KBM, at *21 (D.N.M. May 26, 2010)(Browning, J.)(finding that, because the Court would not, under rule 403 of the Federal Rules of Evidence, admit at trial the letters informing the plaintiff that he was awarded disability retirement, it therefore would not consider them on summary judgment). See Solomon v. Vilsack, 656 F. Supp. 2d 55, 59-60 (D.D.C. 2009)("The[] requirements for eligibility distinguish FERS disability benefits from most other federal disability benefits programs."). Significantly, other courts have held that a plaintiff's award of FERS benefits based on her inability to work demonstrates that she is not "otherwise qualified" for employment under the Rehabilitation Act. Serino v. Potter, 178 F. App'x 552, 555-56 (7th Cir. 2006); Solomon v. Vilsack, 656 F. Supp. 2d at 59-62; Chinchillo v. Powell, 236 F. Supp. 2d 18, 26-27 (D.D.C. 2003)("An employee cannot plausibly claim that he is unable to work at all to obtain FERS benefits but able to work with an accommodation in connection with a Rehabilitation Act claim.").

-60-